******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.*
JAHMON HAKEEM NORRIS
(AC 44024)

Bright, C. J., and Clark and DiPentima, Js.

*Syllabus*

Convicted under two informations of the crimes of risk of injury to a child, assault in the third degree, breach of the peace in the second degree and interfering with an officer, the defendant appealed to this court. The defendant's convictions stemmed from his involvement in a domestic violence incident with his girlfriend, which her minor child witnessed, and from his aggressive behavior with a police officer and hospital staff after he was brought to a hospital following the domestic violence incident. He claimed that the trial court improperly failed to conduct an adequate independent inquiry into his competency to stand trial and to order a competency hearing at the start of trial following a prior evaluation in which he had been found competent to stand trial. He also claimed that the court improperly granted the state's motion for joinder of the cases for trial because the conduct alleged in the domestic violence assault case was significantly more brutal and shocking than the conduct at the hospital alleged in the interfering with an officer case. *Held*:

1. The trial court did not abuse its discretion in denying the defendant's motion for a competency evaluation or in failing to conduct an independent inquiry into his competency, the defendant having failed to meet his burden that, at the time he moved for the competency evaluation, the court had before it specific factual allegations that, if true, would have constituted substantial evidence of mental impairment: the court, before ruling on the motion, engaged in extensive dialogue with the defendant, observed his demeanor, took notice of his general pattern of disruptive conduct, reviewed the competency report in the case file, and determined that the defendant was competent to stand trial and that his repeated disruptions and assertions that he did not understand were a delay tactic and specifically referenced the defendant's behavior when denying the motion; moreover, the court concluded that, on the basis of the defendant's comments and ability to remain calm and cooperative during the initial stages of jury selection, the defendant clearly understood what was happening; furthermore, the court did not err in relying, in part, on the defendant's previous competency evaluation, as the defendant failed to produce any evidence that demonstrated that his condition had changed since that evaluation, and the previous report was not the only source of information on which the court relied in making its determination.

2. The trial court did not abuse its discretion in consolidating the two informations for trial, as the defendant failed to demonstrate that joinder resulted in substantial prejudice to him: although the trial court erred by joining the defendant's two cases for trial because the defendant's conduct with respect to the domestic violence assault charge was significantly more brutal and shocking than his conduct at the hospital relating to the interfering with an officer charge, the court's explicit instructions to the jury to consider each charge separately in reaching its verdict sufficiently cured the risk of substantial prejudice to the defendant and, therefore, preserved the jury's ability to fairly and impartially consider the offenses charged in the jointly tried cases; moreover, it was highly unlikely that the violent nature of the facts adduced in the domestic violence case prejudiced the jury's verdict as to the defendant's state of mind in the interfering with an officer case because the facts of what happened at the hospital were undisputed; furthermore, the fact that the jury acquitted the defendant of charges in both cases highlighted the limited prejudicial impact that joinder had.

Argued January 3—officially released June 14, 2022

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of risk of injury to a child, interfering with an officer, breach of the peace in the second degree, interfering with an emergency call, assault in the third degree, threatening in the second degree and strangulation in the second degree, and substitute information, in the second case, charging the defendant with the crimes of assault on a public safety officer and interfering with an officer, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, where the court, *Doyle, J.*, granted the defendant's motion for a competency evaluation; thereafter, following a competency hearing, the court, *Doyle, J.*, determined that the defendant was competent to stand trial; subsequently, the court, *Klatt, J.*, granted the state's motion for joinder and denied the defendant's motion for a competency evaluation; thereafter, the matter was tried to the jury before *Klatt, J.*; verdicts and judgments of guilty of risk of injury to a child, assault in the third degree, breach of the peace in the second degree and interfering with an officer, from which the defendant appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (defendant).

*Melissa Patterson*, senior assistant state's attorney, with whom were *Anne Holley*, senior assistant state's attorney, and, on the brief, *Maureen Platt*, state's attorney, for the appellee (state).

*Opinion*

BRIGHT, C. J. The defendant, Jahmon Hakeem Norris, appeals from the judgments of conviction, rendered by the trial court following a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (2), assault in the third degree in violation of General Statutes § 53a-61 (a) (1), and interfering with an officer in violation of General Statutes § 53a-167a. On appeal, the defendant claims that the court abused its discretion by (1) failing to conduct an adequate independent inquiry into the defendant's competency to stand trial and order a competency hearing pursuant to General Statutes § 54-56d[1] and (2) improperly granting the state's motion for joinder for trial of the charge of interfering with an officer with the other charges the defendant faced. We affirm the judgments of the trial court.

The following facts, which reasonably could have been found by the jury, and procedural history inform our review of the defendant's claims. In February, 2018, the defendant rekindled a friendship with T.[2] At that time, the defendant was having financial difficulties and needed help, so T allowed him to live with her and her children at her Waterbury apartment. By April, 2018, T and the defendant were in a romantic relationship.

On the morning of April 14, 2018, the defendant, T, and T's six year old daughter, I, were all at the apartment. The defendant and T were arguing because the defendant had asked her for money to visit his daughter in New Haven, but T did not have any money to give him. As the argument progressed, the defendant became more aggressive with T and eventually pushed her into the kitchen. At that point, T asked the defendant to leave, but he refused and began walking toward her. T told him, "Do not put your hands on me," but the defendant kept coming. T grabbed a knife to defend herself, but the defendant broke the blade off of the knife while it was still in her hand.

The fight between the defendant and T then became more physical. The defendant grabbed at T, struck her, bit her, held her down on the couch, ripped her clothes off, spat in her face, pressed his arm against her throat, grabbed her by the hair, threw her onto the kitchen floor, and then hit her again, this time in the mouth, which caused her to bleed onto the floor. The defendant later instructed I to clean up her mother's blood.

During the fight, T told I to leave the apartment, but the defendant prevented I from leaving. T also repeatedly tried to call 911, but the defendant took her phone. The defendant eventually gave T her phone back so that she could try to find someone to give the defendant money. T used that opportunity to text several people and tell them that she needed help because the defen-

dant would not let her go.

One of the people who received a text from T called the police, and two officers from the Waterbury Police Department, Brian Gutierrez and Justin DeVaull, were dispatched to T's apartment to conduct a welfare check. After arriving at the apartment building, the officers knocked on the exterior front door but no one answered. They eventually located an open window and used that to enter the building. The officers then found the door to T's apartment, knocked, and identified themselves. The defendant partially opened the door but with the chain lock still in place. The officers identified themselves again and told the defendant that they were there for a welfare check, but the defendant slammed the door shut. The officers then kicked the door down so that they could check on T. Upon entering the apartment, they found T in the kitchen, crying and shaking, and with bruises to her neck, back, and lip, and bite marks on both sides of her body. I was also in the kitchen with T and appeared scared. The officers then arrested the defendant.

After the defendant was arrested, he was taken to St. Mary's Hospital in Waterbury. Officer Joseph Civitella accompanied the defendant to the hospital and was assigned to guard him while he was being treated. The defendant was seen by a physician, who determined that he needed X-rays. While the defendant and Civitella waited for him to be x-rayed, the defendant became agitated and impatient. Civitella unsuccessfully tried to calm him down, but the defendant, who was partially handcuffed to a stretcher, became physically aggressive and launched himself off of the stretcher and onto the floor. Civitella requested assistance to get the defendant back on the stretcher. A fellow officer, as well as hospital security staff and a patient care assistant, Raphael Pages, came to help. While the group was struggling to return the defendant to the stretcher, he began banging his head against the wall. Pages, in an attempt to restrain the defendant, placed his hand over the defendant's face. The defendant then bit Pages' finger through his medical glove, causing Pages to bleed.

The state charged the defendant in two separate informations—one relating to the domestic violence incident in T's apartment and one relating to the defendant's actions at the hospital. With respect to the domestic violence incident, the defendant was charged with risk of injury to a child, interfering with an officer, breach of the peace in the second degree, interfering with an emergency call, assault in the third degree, threatening in the second degree, and strangulation in the second degree. With respect to the hospital incident, the defendant was charged with assault on a public safety officer and interfering with an officer.

Prior to the defendant's trial, the state filed a motion to join the two informations for trial, which the court,

*Klatt, J.*, granted.[3] A jury trial followed. With respect to the domestic violence incident, the defendant testified that T was the aggressor and that he had acted in self-defense. He also testified that he never prevented I from leaving the apartment. As to the hospital incident, the defendant admitted to throwing himself off of the stretcher and biting Pages but claimed that he only bit Pages because Pages was restricting his ability to breathe.

After the conclusion of the trial, the jury found the defendant guilty of risk of injury to a child, assault in the third degree, and breach of the peace in the second degree in the domestic violence case, and guilty of interfering with an officer in the hospital case. The jury acquitted the defendant of the remaining charges in both cases. The court accepted the jury's verdict and sentenced the defendant to a total effective term of twelve years of incarceration, execution suspended after six years, with five years of probation. This appeal followed. Additional facts and procedural history will be set forth below as needed.

I

The defendant first claims that the court abused its discretion by failing to conduct an independent inquiry into his competency to stand trial and, consequently, failing to order a competency hearing pursuant to § 54-56d. We are not persuaded.

The following additional facts and procedural history are necessary to our resolution of these claims. Defense counsel was appointed for the defendant on May 15, 2018, and, thereafter, moved for a competency evaluation pursuant to § 54-56d, which the court, *Doyle, J.*, granted. Suzanne Ducate, a psychiatrist, performed the defendant's competency evaluation and issued a report in which she concluded that the defendant was able to understand the proceedings against him and assist in his own defense. On December 10, 2018, the court held a competency hearing at which the defendant was found competent to stand trial.

On July 26, 2019, the defendant filed a motion for a speedy trial, which was granted on September 11, 2019. Two days later, defense counsel made an oral motion to withdraw as counsel, which the court granted. Thereafter, Attorney Jared Millbrandt was appointed to represent the defendant. Then, on November 6, 2019, the parties appeared before the court for a hearing on the state's motion for joinder and the start of jury selection. At the start of the hearing, the defendant indicated that he wanted to address the court. The court warned the defendant against doing so, but the defendant iterated his wish to speak. The defendant then remarked as follows:

"In all due respect, Your Honor, I don't believe that I'm ready to go to trial. I wasn't briefed or prepared to

go to trial; I just met this attorney . . . maybe less than a month [ago]. We had two sessions in Cheshire, and since then it's—I'm not prepared. I don't know nothing about the jury. I don't know about the selection. I don't know what to ask him. I wasn't told anything. Today was supposed to have been a day where we schedule, and . . . I was supposed to have another chance of seeing my lawyer to talk to him about jury duty, or how to pick [a] jury, or what to say to the jury, or what the jury is."

The parties then had a short conversation with the court about the defendant's previously granted motion for a speedy trial. The parties also agreed that jury selection had been scheduled to start that day. The court then explained to the defendant that his speedy trial motion had "[set] into motion a series of steps, which lead to jury selection." The court further noted that there was no indication that defense counsel was unprepared to select a jury. In response, the defendant reiterated his belief that he and Millbrandt were not prepared for jury selection and that it was in the defendant's best interest to reschedule the proceedings. Defense counsel denied being unprepared, and the court denied the defendant's motion for a continuance.

The court next attempted to hear the state's motion for joinder, but the defendant interrupted the proceedings again, this time stating: "I don't want to work with [Millbrandt] no more. It's over. I don't want to work with you, so I don't know how that's going to work. I'd rather represent myself. I'm fine." The court advised the defendant against representing himself and also warned him that continued disruptions would not be tolerated. The court took no action on the defendant's request to have defense counsel removed.

After hearing arguments from the parties on the state's motion for joinder, the court granted that motion. Because the state had filed two substitute informations in order to correct some typographical errors, the court ordered that the defendant be put to plea on the substitute informations. At that point, the defendant remarked: "Your Honor, I don't know what's going on." The court explained that, as a matter of procedure, the defendant needed to enter his not guilty pleas again. The following colloquy then took place:

"The Defendant: So what about the splitting the two cases and not joining? That's what we—

"The Court: I granted the state's motion to join them, so it's one trial that you're facing. Two separate information[s], but one trial that you're facing.

"The Defendant: So, you're saying that the jury's going to hear both cases at the same time?

"The Court: Correct.

"The Defendant: But that's—I thought that's what we

were arguing about. Your Honor, see, this is what I'm—

"The Court: And I get that, sir. Your counsel made—again, your—

"The Defendant: He made an argument just now for that?

"The Court: He argued it, he filed a brief.

"The Defendant: Wait a minute. When did he argue on—that's what I'm just trying to understand. I don't understand.

"The Court: Sir, I am not getting into a conversation with you about what just happened. You heard your attorney argue. I have already indicated that he has filed a motion. I've listened to both arguments—

"The Defendant: Can I see that motion? Oh, this is the motion?

"The Court: I have done—I have listened to both arguments—

"The Defendant: Yes.

"The Court: I've researched the case law, and I've made a ruling. Just because . . . the court doesn't rule in your favor, does not mean that a lawyer is not doing his job. Now, put the defendant to plea. . . .

"The Defendant: No, I don't understand what's going on."

The court again attempted to put the defendant to plea, first on the information in the domestic violence case, to which the defendant pleaded not guilty. The court next asked the defendant if he was electing a trial by the court or a trial by jury, to which the defendant again professed, "I don't know what's going on." The court explained the difference between a jury trial and a bench trial, but the defendant continued to state that he did not understand what was happening. This led to another exchange between the court, the defendant, and defense counsel:

"The Defendant: Okay. And what are we doing right now?

"[Defense Counsel]: We're picking a jury, as I've explained to you a number of times.

"The Defendant: I don't understand you. I don't understand it.

"[Defense Counsel]: Your Honor, at this point I don't know what more I can say to the court.

"The Court: Sir, are you electing to a court or a jury?

"The Defendant: If I'm asking Your Honor, if I'm being forced, I don't want to be forced to say anything that I [don't] understand. That's why I'm asking. I don't—and I see that you're getting frustrated because you're feeling like I—

"The Court: What don't you understand about what's happening?

"The Defendant: I just don't understand what's going on. I don't know why I'm pleading guilty, okay—

"The Court: You're not pleading guilty, you're pleading not guilty.

"The Defendant: Okay. I don't understand why I'm not—

"The Court: What don't you understand about being told that you're being asked whether or not you want a jury trial? You filed the motion for [a] speedy trial. You're telling me you don't understand. What don't you understand about this process?

"The Defendant: I filed for a motion because that's what I discussed with my lawyer, that that was for my best interest.

"The Court: Okay.

"The Defendant: To push the case forward. But, since then I don't understand where—like, what's today and how like, you're telling me to plead—not plead guilty, and to pick for a jury. And that you said something about you and the court and the state, or whatever.

"The Court: All right.

"The Defendant: I'm not playing to—you know, I don't—

"The Court: Sir, I don't—quite frankly I'm going to have it noted for the record that it appears to me that the defendant fully understands what's happening, and is attempting to be obstructionist. So, again—

"The Defendant: Okay.

"The Court: [A]re you electing to a jury trial?

"The Defendant: Your Honor—

"The Court: Do you want a jury to make a decision as to whether or not you're guilty or not guilty, or do you want a judge to make a decision as to whether or not you're guilty or not guilty? It's that simple. It's not difficult to understand. You're an intelligent young man, make that choice now.

"The Defendant: I don't—I don't—what do you want me to do, man?"

Defense counsel then asked for a five minute recess, which the court granted. After the parties returned to the courtroom, defense counsel moved for a competency evaluation, stating: "Your Honor, at this time I just would like to make a record. I met with [the defendant] in an effort to discuss what is happening here today again. I emphasize[d] that we are here to begin jury selection in his case, for which he had prior counsel file a speedy trial motion. He repeatedly indicated to

me he doesn't understand what's happening. At this point I'm making a motion pursuant to [§] 54-56d, as he does not apparently have the ability to assist in his own defense, nor understand the charges against him."

The defendant then interrupted, again stating that he did not understand what was happening. Defense counsel explained that he was moving for a competency evaluation to determine whether the defendant understood the nature of the charges against him, as had previously occurred in the case. The defendant proclaimed to have no memory of a prior competency evaluation, at which point the prosecutor interrupted and noted that the defendant had previously undergone a competency evaluation and been found competent to stand trial. The court then reviewed the competency report in the case file. Thereafter, the court remarked:

"All right. I've reviewed the file. I'll indicate for the record that apparently the defendant's indication that he doesn't know, he doesn't understand, has been a repeated theme throughout this particular prosecution.

"The psychiatrist who examined him indicated that he was uncooperative throughout the process. He repeatedly responded to her, I don't know, I don't remember, it's none of your business. That he claimed [that] he developed some type of amnesia when he was incarcerated. I lost my memory at [the Department of Correction]. I can't remember things. But it's simply—the bottom line determination is overall, and I'm quoting from the [competency] report. 'Overall it is the evaluator's opinion that [the defendant's] uncooperativeness during the evaluation and his lack of psychiatric symptoms or signs indicate that his performance during much of the evaluation is not considered to be an accurate representation of his abilities [or knowledge] base, especially with his past history of involvement with the legal system.' I think he is attempting to simply prolong or postpone things, rather than to get to—ultimately get to the trial. I do not see where his behavior or anything that [the defendant] has said is indicative of the fact that he's not capable of understanding or not capable of assisting his counsel. He may be unwilling to do so, but that is not the same as being incapable. So, in light of that, and in light of the fact that there has been a recent evaluation, and I've seen nothing different other than he repeats the same thing again and again and again, I'll deny any motion for evaluation."

In response, the defendant remarked: "Your Honor, like I said, I'm not playing any games with you. I'm not trying to manipulate the system." The court responded that such a comment told the court that the defendant was "fully capable and understanding of the system and [had] the ability to proceed." The substitute informations were again read to the defendant, who continued to claim that he did not understand. The court then entered pleas of not guilty on all of the charges in both

informations and elected a jury trial on the defendant's behalf. Thereafter, the court ordered the defendant to cooperate with defense counsel and warned him that, if he disrupted the proceedings again, he would be held in contempt. At that point, one final conversation between the court and the defendant occurred:

"The Defendant: I'm not going to cause any problems. But, Your Honor—

"The Court: Very good.

"The Defendant: [Y]ou just met me, Your Honor, and you already have an idea of who I am, and I continue to say the same thing—

"The Court: I have no idea who you are sir.

"The Defendant: I continue to say the same thing. This whole . . . almost eighteen months I haven't known anything that's going on with my case, Your Honor. I don't know anything.

"The Court: And simply saying I don't know, doesn't quite frankly help you at this point in time.

"The Defendant: How is that not helping me? I'm not trying to ask for help, but how do I suppose to talk to a jury, get up on the stand when I wasn't—I don't know anything about my defense. It's in my—like, I don't have a defense, Your Honor.

"The Court: Sir, again—

"The Defendant: You just—all right. You just—it's all about this man and he's fighting—he might as well take—he might as well take the sentence that I have.

"The Court: Okay.

"The Defendant: You giving my life to this man right here.

"The Court: Well, what everyone is trying to tell you is you are accused of a crime. You have a right to a trial. You are being given the opportunity for that trial. What I am trying to warn you about is, based on your past behavior this morning, we should have already been jury selecting. Instead, we have continually—you have continually stopped the events by claiming that you don't know what's happening, when it's abundantly clear that you do know what's happening.

"The Defendant: How is that?

"The Court: That is because I'm listening to what you've said."

Despite the court's repeated warnings, the defendant continued to disrupt the remaining jury selection proceedings by making loud comments to Millbrandt and asking the court questions about jury selection. This led the court ultimately to remark: "All right. Counsel, for the last time, and I am not repeating it. If your client interrupts one more time with the loud questioning

of you, which is clearly heard throughout the whole courtroom, and possibly infecting the jury, and I would note that he certainly managed to keep quiet and not interrupt during the time when he needed to. So, in my opinion, this is all a show by him."

We begin by setting forth the standard of review and legal principles that guide our analysis. "We review the court's ruling on a motion for a competency evaluation under the abuse of discretion standard. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *State* v. *Kendall*, 123 Conn. App. 625, 651, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010).

"[T]he conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. . . . This rule imposes a constitutional obligation, [on the trial court], to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial . . . . [Section] 54-56d (a) codified this constitutional mandate, providing in relevant part: A defendant shall not be tried, convicted or sentenced while the defendant is not competent. [A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"This statutory definition mirrors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). According to *Dusky*, the test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. . . .

"Although § 54-56d (b) presumes the competency of defendants, when a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination. . . . Thus, [a]s a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial

if it raises a reasonable doubt about the defendant's competency . . . . The trial court should carefully weigh the need for a hearing in each case, but this is not to say that a hearing should be available on demand." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Jordan*, 151 Conn. App. 1, 30–32, 92 A.3d 1032, cert. denied, 314 Conn. 909, 100 A.3d 402 (2014).

The defendant claims that his convictions should be reversed, and a new hearing ordered to determine whether a competency evaluation is required, because the court in the present case failed to conduct an adequate, independent inquiry into his competency and, thus, violated his due process rights. In support of his claim, the defendant principally relies on *State* v. *Dort*, 315 Conn. 151, 106 A.3d 277 (2014). Specifically, he claims that "the extent of the 'inquiry' conducted by the court was to review a stale competency evaluation and unilaterally interpret [the defendant's] behavior as obstinate and dilatory. As in *Dort* . . . this is insufficient to satisfy the court's constitutional mandate." Because the facts of this case are markedly different than those in *Dort*, we are not persuaded.

In *Dort*, our Supreme Court affirmed this court's reversal of the defendant's judgment of conviction following the trial court's denial of the defendant's request for a competency hearing. *State* v. Dort, supra, 315 Conn. 153–55. As in the present case, the defendant in *Dort* was found competent to stand trial after an earlier competency evaluation was done. Id., 156. Before the start of jury selection, however, defense counsel requested a second competency evaluation. Id., 156–57. In requesting that evaluation, defense counsel provided several detailed representations to the court regarding why further inquiry into the defendant's competency was required. Id., 156–59. Specifically, defense counsel told the court that his client had a fundamental misunderstanding as to "what can be put forward as a defense in this case" and "the seriousness of the charges in light of the defense." (Internal quotation marks omitted.) Id., 158. Defense counsel also informed the court that "attempting to extrapolate the relevant information from [the defendant] in order for [counsel] to go forward with his defense is virtually impossible" and that the current circumstances were not merely a tactical disagreement between him and the defendant. (Internal quotation marks omitted.) Id. When pressed by the court for more details, defense counsel asserted that the defendant lacked a sufficient understanding of certain facts that were highly relevant to the case.[4] Id., 159.

The court then reviewed the earlier competency report and, based largely on that report, denied the defendant's motion for a competency evaluation after finding that the statements made by defense counsel in support of the motion did not constitute substantial

evidence that would give rise to a concern regarding the defendant's competency. Id., 175. In denying the defendant's motion, the court did not canvass the defendant regarding his competency or consider the defendant's behavior in court. Id., 176. The court also denied the defendant's request to address the court regarding his competency to stand trial. Id., 159–60. The defendant then appealed to this court.

On appeal, we reversed the trial court's judgment of conviction, holding that the court had abused its discretion by disregarding defense counsel's assertions that the defendant was not competent without conducting any further inquiry into the defendant's competence. *State* v. *Dort*, 138 Conn. App. 401, 412, 51 A.3d 1186 (2012), aff'd, 315 Conn. 151, 106 A.3d 277 (2014). We specifically concluded that the court's inquiry into the defendant's competence was insufficient because the court never made "any reference to the defendant's behavior or any relevant communications with the defendant" and "also refused the defendant the opportunity to address the court on [the issue of competency]." Id.

The state then appealed to our Supreme Court. On appeal, the Supreme Court affirmed this court's reversal of the judgment of the trial court, albeit on different grounds. *State* v. *Dort*, supra, 315 Conn. 178. The court focused on whether the allegations made by the defendant in support of his motion for a competency evaluation constituted substantial evidence of mental impairment such that further inquiry into the impairment was required by the trial court and, if so, whether the court sufficiently conducted such an inquiry. Id., 169–70. The court then concluded that "[t]he statements made by defense counsel in support of the defendant's motion for a competency hearing represent the sort of specific, fact laden allegations that, if true, would constitute substantial evidence of mental impairment on the part of the defendant." Id., 178. Accordingly, the court concluded that the trial court abused its discretion when it rejected defense counsel's statements and instead relied solely on the "seven month old competency report." Id.

The court also rejected the state's argument that the trial court properly relied on its own observations of the defendant instead of relying on counsel's representations. Id., 182. The court held: "Although we agree with the state that a trial court need not automatically defer to the opinion of defense counsel on the matter of the defendant's competence when the trial court sees evidence contradicting those representations before his or her own eyes; see, e.g., *State* v. *DesLaurier*, [230 Conn. 572, 589–90, 646 A.2d 108 (1994)]; we disagree that the defendant was canvassed here, and we note that the trial court did not deny the defendant's motion on the basis of its own in-court observations regarding

the defendant's behavior." Id.

The facts of this case are distinguishable from those in *Dort* in two important respects. First, in the present case, unlike in *Dort*, defense counsel failed to make any specific or detailed factual representations in support of his motion for a competency evaluation. Instead, defense counsel stated only that the defendant had "repeatedly indicated to me he doesn't understand what's happening" and that defense counsel therefore believed that the defendant "does not apparently have the ability to assist in his own defense, nor understand the charges against him." These representations were vague in nature and unsupported by any particular allegations that might have constituted substantial evidence of the defendant's lack of competency. Trial courts are only required to conduct an independent inquiry into a defendant's competency when the defendant "makes *specific* factual allegations that, if true, would constitute substantial evidence of mental impairment." (Emphasis added; internal quotation marks omitted.) *State* v. *Jordan*, supra, 151 Conn. App. 31. Such specific factual allegations simply do not exist in the present case. Accordingly, the court did not abuse its discretion when it declined to conduct a more thorough independent inquiry than it did into the defendant's competency.

Second, unlike in *Dort*, the court in the present case conducted a thorough inquiry into the defendant's competency by engaging in extensive dialogues with the defendant both before and after Millbrandt moved for a competency evaluation, and it made reference to its observation of the defendant's behavior when discussing the defendant's competency. As we set forth previously in detail, the court and the defendant had several in-depth conversations over the course of the proceedings on November 6, 2019. During these lengthy exchanges, the court was able to speak directly with the defendant and observe his demeanor, as well as take notice of a general pattern of disruptive conduct by the defendant. In addition, the court also reviewed the competency report in the case file and determined that the report confirmed the court's own observations that the defendant was competent to stand trial and that his repeated disruptions and assertions that he did not understand were simply a delay tactic.

Furthermore, even after the court denied the defendant's motion for a competency evaluation, the court continued to take into account the defendant's behavior, including his comments that he was not "playing games" or trying to manipulate the system, as well as the defendant's ability to remain calm and cooperative during the initial stages of jury selection. On the basis of these additional observations, the court again concluded that, the defendant's repeated assertions notwithstanding, it was abundantly clear that the defendant did, in fact, understand what was happening.

Thus, the bases for the court's denial of a competency evaluation in this case were much different than that in *Dort*. In *State* v. *Dort*, supra, 315 Conn. 182, "the trial court did not deny the defendant's motion on the basis of its own in-court observations regarding the defendant's behavior." In the present case, by contrast, the court specifically referenced the defendant's behavior, which it had observed at length, when denying the motion for a competency evaluation. This court has held that relying on such information is sufficient. See *State* v. *Jordan*, supra, 151 Conn. App. 35–37 (court's denial of defendant's motion for competency evaluation was not abuse of its discretion when denial was based on court's review of previous competency report and court's own observations of defendant). This court also previously has held that behavior of a defendant similar to that observed by the court in this case does not require a competency evaluation. See *State* v. *Johnson*, 22 Conn. App. 477, 489, 578 A.2d 1085 (defendant's "obstreperous, uncooperative or belligerent behavior did not obligate the court to order a competency examination," particularly when defendant's behavior showed he had ability to be cooperative but did not want to), cert. denied, 216 Conn. 817, 580 A.2d 63 (1990); see also *State* v. *Paulino*, 127 Conn. App. 51, 66, 12 A.3d 628 (2011) ("although the defendant did admit that he often was confused by court procedures, a lack of legal expertise is not indicative of incompetence").

Consequently, contrary to the defendant's claim, the court was not required to accept defense counsel's bald assertion that the defendant lacked the capacity to understand the proceedings and assist in his own defense. First, it is clear from the transcript of the November 6, 2019 hearing that the court did consider defense counsel's allegations regarding the defendant's competency. It simply was unpersuaded by those allegations, in large part because the court had been able to observe and talk with the defendant during the hearing. On the basis of the court's own observations of and interactions with the defendant, it was reasonable for the court to give less weight to defense counsel's representations regarding the defendant's competency. Second, we are unpersuaded by the defendant's argument that his counsel's opinion regarding his competency was entitled to greater weight because the motion for a competency evaluation was made after a brief recess during which counsel had an opportunity to talk privately with the defendant. Following the recess, defense counsel provided the court with no specific factual allegations concerning the defendant's lack of competency. Furthermore, the court engaged in an extensive dialogue with the defendant after the recess and specifically referred to its observations of and interactions with the defendant when it denied the defendant's motion.

We also reject the defendant's argument that the court should not have considered the defendant's prior competency evaluation because it was one year old. In *State* v. *Jordan*, supra, 151 Conn. App. 36–37, the defendant made the same argument. In response, this court noted: "The defendant . . . has not cited, and we have not found, any case law that establishes a bright line rule as to when a competency report becomes stale. *State* v. *Mordasky*, 84 Conn. App. 436, 447, 853 A.2d 626 (2004). Rather, the court's inquiry when deciding whether to order another competency evaluation is whether the defendant's condition has materially changed since a previous finding of competence." (Internal quotation marks omitted.) *State* v. *Jordan*, supra, 37. As was true of the defendant in *Jordan*, in the present case, the defendant failed to produce any evidence that demonstrated that his condition had changed since the 2018 evaluation. Moreover, as previously noted in this opinion, the 2018 competency report was not the only source of information on which the court relied when making its decision. Accordingly, the court's reliance, in part, on the 2018 competency report does not undermine our conclusion that the court did not abuse its discretion in denying the defendant's motion for a competency evaluation.

The defendant also argues that, by relying on the previous competency report to deny his motion, the court ignored and discounted the defendant's prior history of mental impairment. We disagree. The report specifically discussed the defendant's mental health history, and there is nothing in the record to indicate that the court did not consider that portion of the report in denying the defendant's motion.

Finally, the defendant argues that the court erred when it failed to canvass the defendant before denying his motion. There are two problems with this argument. First, it assumes that there was no canvass of the defendant in the present case. As set forth previously in this opinion, the court had extensive discussions with the defendant from which it could form an opinion as to the defendant's competency. During these discussions, the defendant initially stated that he was not ready to go to trial, had not had sufficient time to meet with his counsel, who he did not believe was prepared for trial, and had questions about the jury selection process. He also asked whether the cases were going to be tried separately. Thus, he demonstrated that he understood what was happening but just did not want to go forward with jury selection on a consolidated trial that day. It was only after the court told the defendant that jury selection was going forward that he began stating that he did not understand what was happening. The court then engaged in further discussions with the defendant before defense counsel made his motion for a competency evaluation, which the court denied. Although the

court did not specifically ask the defendant if he understood the nature of the charges against him and whether could assist in his own defense, it simply is inaccurate to say that the court did not canvass the defendant. Second, in *Dort*, the Supreme Court made clear that some form of a canvass of the defendant was required because defense counsel had made "specific, fact laden allegations that, if true, would constitute substantial evidence of mental impairment on the part of the defendant." *State* v. *Dort*, supra, 315 Conn. 178. In the present case, no such allegations were made.

In sum, for the foregoing reasons, we conclude that the court did not abuse its discretion by denying the defendant's motion for a competency evaluation or conducting a further inquiry of its own before denying the motion.

II

The defendant next claims that the court erred when it granted the state's motion to join for trial the charges in the two separate informations. Specifically, the defendant argues that joinder was improper under the second *State* v. *Boscarino*, 204 Conn. 714, 723, 529 A.2d 1260 (1987) factor because the conduct alleged in the domestic violence case was "of a brutal or shocking nature, far in excess of the allegations underlying the interfering with an officer charge [in the hospital case]." The defendant further argues that insufficient jury instructions were given to cure the prejudicial effect of the joinder. We agree that the court erred in joining the charges in the two separate informations, but we also conclude that, under the circumstances of this case, the court's instructions to the jury were sufficient to cure any prejudice caused by the joinder.

The following additional facts and procedural history are necessary to our resolution of this claim. On September 23, 2018, the state filed a motion for joinder of the charges in the two informations, claiming that the "charges involve discrete, easily distinguishable factual scenarios . . . the crimes are not violent in nature and do not concern brutal or shocking conduct on the defendant's part . . . the incidents are consecutive events . . . and . . . the trial will not be complex." On November 6, 2019, the defendant filed an objection to the motion, asserting that joinder was "inappropriate as it would result in significant and substantial prejudice to the defendant [and] allow the jury to hear repetitious allegations concerning violent conduct and might allow the jury to conclude guilt based on what amounts to propensity evidence."

Also on November 6, 2019, the court, *Klatt, J.*, held a hearing on the state's motion. At the hearing, the prosecutor conceded that the evidence in the two cases was not cross admissible but argued that joinder was nonetheless proper. Defense counsel disagreed and

argued that joinder of the two cases would "amount to propensity evidence, thus allowing the jury to conclude that, because [the defendant] is charged in two informations occurring on the same date, or two separate incidents occurring on the same date, that he is essentially a bad person." The court then conducted an analysis under *State* v. *Boscarino*, supra, 204 Conn. 722–24, and concluded that joinder would not substantially prejudice the defendant because (1) the charges were discreet and based on easily distinguishable facts, (2) the crimes, although violent in nature, were not shocking to the conscience, and (3) joinder would not result in a lengthy or complicated trial. The charges in the two informations were then joined for presentation at a single trial. On appeal, the defendant challenges only the court's conclusion as to the second *Boscarino* factor.

We first set forth the standard of review and legal principles that guide our analysis. "The principles that govern our review of a trial court's ruling on a motion for joinder . . . are well established. Practice Book § 41-19 provides that [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. . . . In deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that [joinder] resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions. . . .

"A long line of cases establishes that the paramount concern [when joining informations] is whether the defendant's right to a fair trial will be impaired. Therefore, in considering whether joinder is proper, this court has recognized that, where evidence of one incident would be admissible at the trial of the other incident, separate trials would provide the defendant no significant benefit. . . . Under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . Accordingly, we have found joinder to be proper where the evidence of other crimes or uncharged misconduct [was] cross admissible at separate trials. . . . Where evidence is cross admissible, therefore, our inquiry ends.

"Substantial prejudice does not necessarily result from [joinder] even [if the] evidence of one offense would not have been admissible at a separate trial involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him

. . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . .

"[Accordingly, the] court's discretion regarding joinder . . . is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, [in *State* v. *Boscarino*, supra, 204 Conn. 722–24, our Supreme Court] identified several factors that a trial court should consider in deciding whether a severance or [denial of joinder] may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citation omitted; internal quotation marks omitted.) *State* v. *McKethan*, 184 Conn. App. 187, 194–96, 194 A.3d 293, cert. denied, 330 Conn. 931, 194 A.3d 779 (2018).

Before turning to the merits of the defendant's joinder claim we address the state's argument that the claim was not properly preserved for appellate review. The state argues that the claim is unpreserved because (1) "the defendant never contested the state's representation of the facts as they relate to the second *Boscarino* factor" and (2) "when [T] testified at trial, the defendant never moved to sever based on the supposed change in factual circumstances, namely, the more shocking or brutal nature of the 'domestic violence' case allegations." We disagree and conclude that this claim was preserved.

The state is correct that, as summarized above, the defendant never specifically addressed the second *Boscarino* factor in either his written objection or at the hearing. The court, however, in its ruling on the state's motion for joinder, did address that factor, stating in relevant part: "The crimes, while they are violent in nature, are certainly not so shocking to the conscience that the second factor would be triggered." Because the court addressed the issue now raised on appeal, the claim was properly preserved for appellate review. See *State* v. *McKethan*, supra, 184 Conn. App.

194 n.2 (defendant's challenge to second *Boscarino* factor was preserved even though defendant did not specifically challenge factor before trial court because court addressed second factor in its ruling). Furthermore, the fact that the defendant did not move to sever the two cases after T testified does not undermine our conclusion that the defendant's claim is preserved. Again, because the trial court specifically addressed the violent nature of the defendant's charges in its ruling on the state's motion for joinder, the claim is preserved. See id. ("Unlike the trial court in [*State* v.] *Snowden*, [171 Conn. App. 608, 157 A.3d 1209, cert. denied, 326 Conn. 903, 163 A.3d 1204 (2017)], the trial court in this case specifically addressed the violent nature of the defendant's murder charge in its ruling, which the defendant presently challenges on appeal. We therefore conclude that the defendant's claim is preserved for appellate review.").

We now move to the merits of the defendant's claim. We agree with the defendant that the second *Boscarino* factor weighs against joinder and that the court consequently abused its discretion when it joined for trial the charges in the two informations.

"Whether one or more offenses involved brutal or shocking conduct likely to arouse the passions of the jurors must be ascertained by comparing the relative levels of violence used to perpetrate the offenses charged in each information." (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 551, 34 A.3d 370 (2012). The domestic violence case was based on allegations and evidence that the defendant struck, bit, strangled, spit at, and grabbed T, and, at one point, threw her onto the kitchen floor and hit her in the mouth so hard that she began to bleed. In the hospital case, however, far less violence was involved. Although the defendant did bite a hospital employee during that incident, that was the only violence committed and the incident was described by the hospital's security supervisor as "[j]ust another day at work. Unruly patient and just honestly another day at work." Because the defendant's conduct in the domestic violence case was significantly more brutal and shocking than his conduct in the hospital case, we conclude that the second *Boscarino* factor weighs against joinder. See *State* v. *Ellis*, 270 Conn. 337, 378, 852 A.2d 676 (2004) (defendant's abuse of one victim was substantially more egregious than his abuse of other victims and, therefore, joinder was improper under second *Boscarino* factor). Accordingly, the court erred when it found that the second *Boscarino* factor was not triggered and, thus, abused its discretion when it joined for trial the charges in the two informations.

Our analysis of this claim, however, does not end here. Having concluded that joinder of the defendant's two cases was improper, we must decide whether the

court's jury instructions cured any potential prejudice. In assessing any prejudice to the defendant it is important to note that any prejudice to the defendant could have occurred only with respect to the charges in the hospital case, which was the case that involved substantially less egregious allegations. By contrast, the fact that the jury heard evidence regarding the hospital case was not prejudicial to the defendant, under the second *Boscarino* factor, in the domestic violence case because the allegations in the domestic violence case were more shocking and brutal. See *State* v. *Payne*, supra, 303 Conn. 554 n.19. Consequently, we must determine whether the joinder of the charges in the two informations prejudiced the defendant in the hospital case.

"On appeal, the burden rests with the defendant to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury. . . . [A]lthough a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence . . . where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." (Citation omitted; internal quotation marks omitted.) *State* v. *McKethan*, supra, 184 Conn. App. 198.

In the present case, the court instructed the jury as follows with regard to the charges against the defendant:

"The defendant here is charged with ten counts in two separate informations. The defendant is entitled to and must be given by you, a separate and independent determination of whether he is guilty or not guilty as to each count. Each of the counts charged is a separate crime. The state is required to prove each element in each count beyond a reasonable doubt.

"Each count must be deliberated upon separately. The total number of counts charge[d] does not add to the strength of the state's case. You may find that some evidence applies . . . to more than one count, in more than one information. The evidence, however, must be considered separately as to each element in each count. Each count is a separate entity.

"You must consider each count separately and return a separate verdict for each count. This means you may reach opposite verdicts on different counts. A decision on one count does not bind your decision on another account. Now, again, as I have indicated, the defendant is charged in two separate informations."

The court further instructed the jury on the two separate counts of interfering with an officer as follows:

"Now, interfering with an officer. The defendant is charged in two separate counts with interfering with

an officer. . . . Now, I will remind you of my previous instructions on multiple charges during your deliberations.

"The defendant is charged with two counts of interfering with an officer. While the elements are the same, each of the counts charged is a separate crime. The state charges that separate incidents occurred at different times, in different locations, and with three distinct complainants. Each count must be considered separately, and must be given by you a separate and independent determination of whether [the defendant] is guilty or not guilty as to each count."

The defendant argues that these instructions were insufficient because, despite the court's repeated instruction that each count was to be considered separately, the court never instructed the jury that the evidence in both cases was not cross admissible, and, thus, that the jury could not consider the evidence in the domestic violence case in determining the defendant's guilt in the hospital case.

Although we agree that it is better practice for a trial court to give a specific instruction that the evidence is not cross admissible, we conclude that the jury instructions given in this case were adequate because the risk of prejudice was very low. See *State* v. *McKethan*, supra, 184 Conn. App. 199 (court's repeated instructions to jury that each count must be considered separately cured prejudice caused by joinder because risk of prejudice was not overwhelming). We reach this conclusion for two reasons. First, the instructions given by the court in the present case, with one exception, were very similar to those given by the trial court in *McKethan*, which this court determined were sufficient to cure any possible prejudice resulting from the erroneous joinder. Id. The one difference between the instructions in this case and those in *McKethan* is that, in this case, the court instructed the jury that it may find that some evidence applies "in more than one information." That single statement should not have been made by the court because the state conceded that the evidence supporting each information was not cross admissible. Nevertheless, we cannot conclude that the defendant was prejudiced by this error. The error was an isolated occurrence outweighed by the court's repeated instructions to the jury that it must consider each count against the defendant separately. Moreover, the defendant did not object to the statement after the court made it. In fact, on appeal the defendant has not claimed any error as a result of this statement.

Second, although the defendant's state of mind was at issue regarding the hospital incident, there was no dispute as to the events that occurred during that incident. The defendant himself testified at trial that he threw himself off of the stretcher and bit a hospital employee while receiving treatment at St. Mary's and,

at oral argument before this court, the defendant again conceded that the events of the hospital incident were not in dispute. Given that what happened at the hospital is undisputed, we conclude that it is highly unlikely that the violent nature of the facts adduced in the domestic violence case could have prejudiced the jury's verdict as to his state of mind during the hospital incident. This conclusion is strengthened by the fact that the jury acquitted the defendant of charges in both cases, including of the more serious charge of assault of a police officer in the hospital case, which highlights the limited prejudicial impact that joinder had. See *State* v. *Davis*, 286 Conn. 17, 37, 942 A.2d 373 (2008) ("by acquitting the defendant of all of the offenses charged in [case A], the jury evidently was able to keep the three cases separate and did not blindly condemn the defendant on the basis of the evidence adduced in [case B]"), overruled on other grounds by *State* v. *Payne*, 303 Conn. 528, 549, 34 A.3d 370 (2012); see also *State* v. *Atkinson*, 235 Conn. 748, 766, 670 A.2d 276 (1996) ("by returning a verdict of not guilty on the charge of possession of a weapon in a correctional institution . . . the jury evidently was able to separate the two cases and did not blindly condemn the defendant on his participation in the murder"); *State* v. *Gerald A.*, 183 Conn. App. 82, 123 n.21, 191 A.3d 1003 ("[w]e conclude that acquittal of the charges related to [one victim's] allegations demonstrates that the jury properly considered each information separately"), cert. denied, 330 Conn. 914, 193 A.3d 1210 (2018); *State* v. *Rodriguez*, 91 Conn. App. 112, 120–21, 881 A.2d 371 ("Although the jury found the defendant guilty of all the counts of burglary, attempt to commit burglary, larceny and criminal trespass that it considered, it found the defendant not guilty of one count of breach of the peace in the second degree. That acquittal demonstrated that the jury was able to consider each count separately and, therefore, was not confused or prejudiced against the defendant."), cert. denied, 276 Conn. 909, 886 A.2d 423 (2005). But see *State* v. *Boscarino*, supra, 204 Conn. 724 (acquittals in joined cases did not "establish that the results in the four cases, had they been separately tried, would have been the same").

Although we conclude that the court's instructions, on the specific facts of the present case, were sufficient, as noted previously in this opinion, it would have been preferable for the court expressly to have informed the jury that the evidence adduced by the state with regard to the domestic violence case was not admissible as proof in the hospital case, and to have informed the jury that the cases had been consolidated solely for the purpose of judicial economy. See *State* v. *Delgado*, 243 Conn. 523, 536 n.13, 707 A.2d 1 (1998) (advising that better practice when cases have been joined is to explicitly instruct that evidence in one case is not admissible as proof in separate case). Giving such an instruction

further minimizes any potential prejudice that might come with joining charges in separate informations and serves to underscore for the jury that it must consider the evidence in each case separately.[5]

In sum, for the reasons we have explained, we conclude that, even though the court erred by joining the defendant's two cases, the jury instructions that the court gave sufficiently cured the risk of prejudice to the defendant and, therefore, preserved the jury's ability to fairly and impartially consider the offenses charged in the jointly tried cases. We therefore conclude that the court did not abuse its discretion in consolidating the two informations for trial.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54-56d (c) provides: "If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency."

[2] In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[3] Additional facts about the joinder of the two informations will be provided in part II of this opinion.

[4] Defense counsel specifically stated: "And there's been things he's seized upon, including the fact that there's . . . an alleged gun. And he's been informed that that's not whether the gun is operable or whether it's a rubber gun or it's made of wood—that does not constitute a defense. I cannot for the life of me extrapolate much more in the way of facts from him at this juncture. I don't know whether it's because he's seizing up today or what . . . but I need the information that he's talking about because the charges have just changed and now that's not an issue." (Internal quotation marks omitted.) *State* v. *Dort*, supra, 315 Conn. 174–75.

[5] Our review of the Connecticut Judicial Branch's model criminal jury instructions reveals that the model instructions on multiple informations do not contain the language that we have suggested here. See Connecticut Criminal Jury Instructions 2.6-11, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited June 3, 2022). Accordingly, we encourage the Criminal Jury Instruction Committee to consider adding language to the model instructions directing that, where cases have been joined but the evidence is not cross admissible, the jury cannot use evidence from one case to reach its result in another. The committee may find the jury instructions discussed in *State* v. *Boscarino*, supra, 204 Conn. 719 n.6, and *State* v. *Iovieno*, 14 Conn. App. 710, 722 n.7, 543 A.2d 766, cert. denied, 209 Conn. 805, 548 A.2d 440 (1988), to be helpful examples of such instructions.