******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.*
# ANTHONY RANDOLPH
## (AC 46385)

Bright, C. J., and Suarez and Westbrook, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court finding him in violation of his probation and revoking his probation. The defendant claimed that the trial court improperly denied his counsel's motion to withdraw her appearance and failed to conduct an adequate hearing into his competency to stand trial and, thus, improperly denied his motion for a competency evaluation pursuant to statute (§ 54-56d). *Held*:

1. The trial court did not abuse its discretion in denying the motion to withdraw filed by the defendant's counsel: the court's ruling made clear that the timing of the motion was central to its determination because, although the court stated at a hearing more than one month before the scheduled violation of probation trial that it had no objection to counsel's proposed motion to withdraw, counsel indicated she would file that motion within one or two days of the hearing, and, at the time she ultimately filed the motion, it was only nine days before the trial date; moreover, the court properly concluded that exceptional circumstances did not exist to justify granting the motion so close to trial, as the record reflected that the defendant had the capacity to communicate with the court and that it was the defendant's choice to refuse to communicate with his counsel.

2. The trial court properly evaluated the defendant's motion for a competency evaluation and, thus, did not abuse its discretion in denying the motion: although the defendant's counsel disagreed with the defendant's decisions not to accept a plea offer and not to attend the trial, it was the defendant's right to do so and did not reasonably suggest that he lacked an understanding of the facts of the case or the nature of the proceeding and there was no indication that he could not assist with his defense; moreover, the court observed the defendant's demeanor and conversed with him over the course of a lengthy colloquy regarding the defendant's participation in the hearing, and it reasonably could have determined that his statements did not reflect an inability to grasp the nature of the proceeding or the facts related to the case.

Argued March 4—officially released September 3, 2024

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial

district of New Haven, geographical area number twenty-three, where the court, *Iannotti, J.*, denied the motion to withdraw filed by the defendant's counsel; thereafter, the case was tried to the court, *Fischer, J.*; judgment revoking the defendant's probation, from which he appealed to this court. *Affirmed.*

*J. Christopher Llinas*, assigned counsel, for the appellant (defendant).

*Raynald A. Carre*, deputy assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Thomas Funnican* and *Sarah Jones*, assistant state's attorneys, for the appellee (state).

*Opinion*

SUAREZ, J. The defendant, Anthony Randolph, appeals from the judgment of the trial court finding him in violation of his probation and revoking his probation pursuant to General Statutes § 53a-32. The defendant claims that the court improperly (1) denied his counsel's motion to withdraw her appearance and (2) failed to conduct an adequate inquiry into his competency to stand trial and, consequently, erred in denying his motion for a competency evaluation pursuant to General Statutes § 54-56d. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to the claims raised in this appeal. On November 20, 2020, the defendant pleaded guilty to assault of a public safety officer in violation of General Statutes § 53a-167c. The court, *Vitale, J.*, sentenced the defendant to a ten year term of incarceration, execution suspended after four years, and a three year term of probation. Among the special conditions of probation imposed by the court at the time of sentencing in accordance with General Statutes § 53a-30 were that the defendant submit to (1) substance abuse evaluation and

treatment as deemed appropriate and (2) mental health evaluation and treatment as deemed appropriate.

On April 13, 2022, the defendant was released from prison and began serving his term of probation. Under the direction of adult probation services, the defendant entered Alternative in the Community (AIC) in Waterbury, a halfway housing facility. The defendant was also assigned to complete outpatient services offered by Wellmore Behavioral Health (Wellmore), an organization that provides both substance abuse and mental health services.

On May 26, 2022, the defendant's probation officer, Allison Chance, filed an application for an arrest warrant for the defendant based on his having violated one or more conditions of his probation. In support of the warrant, Chance averred that, on May 11, 2022, the defendant was unsuccessfully discharged from AIC and that the discharge report stated that "[the defendant] was discharged due to his inability to abide by [the program's] rules and regulations. It was reported that [the defendant] had committed sexually inviting acts towards female staff during female visual pat searches. When . . . he was addressed by supervision he became hostile. In the midst of [the defendant's] anger he broke several more of this program's rules. The police were contacted later that night due to [his] not following the direction of staff when he was asked to leave the program's premises. He has been told he is not allowed back on the premises again." Chance also averred that, on May 25, 2022, the defendant was unsuccessfully discharged from Wellmore. Chance stated that "[a] staff member [of Wellmore] reported that [the defendant] was escorted out of the building after saying racial and homophobic slurs to one of their clinicians. [The defendant] is not allowed back on the premises." On the basis of these facts, Chance averred that there was probable cause to believe that the petitioner had

violated the standard condition of his probation that he "[s]ubmit to any medical and/or psychological examination, urinalysis, alcohol and/or drug testing, and/or counseling sessions as required by the [c]ourt or the [p]robation [o]fficer." Chance also averred that there was probable cause to believe that the defendant had violated the special conditions of his probation obligating him to submit to "substance abuse evaluation and treatment as deemed appropriate" and "mental health evaluation and treatment as deemed appropriate."

On June 30, 2022, the court, *Zagaja, J.*, issued the warrant. On July 8, 2022, police executed the warrant and arrested the defendant. Following the defendant's arrest, he was represented by the Office of the Chief Public Defender. Thereafter, the defendant was represented by Attorney Kimberly Coleman, who was appointed by the Office of the Chief Public Defender as assigned counsel.

The court, *Fischer, J.*, held a trial on the violation of probation charge on January 19, 2023. The court heard testimony from Joseph Murolo, an assistant clerk, as well as Chance. The court also received documentary evidence. Following the evidentiary phase of the trial, the court found that the petitioner had violated the terms of his probation.[1] The court based this finding

---

[1] "[R]evocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 375–76, 944 A.3d 276 (2008). A court's findings in the evidentiary phase are governed by the preponderance of the evidence standard. See *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994) ("a trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation").

on its subordinate finding that the defendant had been discharged for disciplinary reasons from AIC as a result of his having acted in a sexually inappropriate and hostile manner toward staff. The court also found that the defendant had not successfully completed the program offered by Wellmore as a result of his having uttered inappropriate racial slurs to clinicians. The court further found that, following his discharge from these programs, the defendant had "several new arrests." In the dispositional phase of the trial, the court found, in light of the defendant's inability to comply with the conditions of his probation and his extensive criminal record, that the beneficial aspects of probation were no longer being served. The court, finding that the defendant was "not a good candidate for probation," revoked the defendant's probationary status and committed him to the care and custody of the Commissioner of Correction to serve the remainder of his six year term of incarceration. This appeal followed.

I

First, the defendant claims that the court improperly denied his counsel's motion to withdraw her appearance. We are not persuaded.

The following additional procedural history is relevant to this claim. The court, *Iannotti, J.*, held a pretrial hearing on November 28, 2022, at which time the defendant was represented by Attorney Coleman not only in the violation of probation case but in connection with additional criminal charges that arose subsequent to the violation of probation charge. At the hearing, the defendant entered a not guilty plea to a pending assault charge. Thereafter, the defendant personally addressed the court to request that Attorney Coleman be "removed from [his] case" on the ground of ineffective representation. During a lengthy colloquy with the court, the defendant represented that Attorney Coleman did not immediately recognize him earlier that day when she visited

with him, "did not explain anything" to him, did not communicate whether there was a pending offer from the state, and did not take steps to have the case moved "to another jurisdiction." The court informed the defendant that Attorney Coleman was appointed to represent him as a special public defender and that he did not have the right to decide who his appointed counsel was. The court informed the defendant that he had the right to hire private counsel of his choice and that he would afford him time to do so. The court, however, cautioned the defendant not to "waste [its] time" in that respect if the defendant did not sincerely intend to hire private counsel.

After the defendant complained that he did not know what was happening, the court discussed the violation of probation charge. The court also discussed a pending plea offer for two and one-half years of incarceration on the violation of probation charge. Attorney Coleman then addressed the court with respect to her efforts on behalf of the defendant, including the circumstances of her interactions with the defendant earlier that day in the courthouse. Attorney Coleman stated that since she was assigned to work on the case, she had filed a court appearance on behalf of the defendant on October 31, 2022, she received police reports, she talked to the prosecutor, and she obtained a background check on the defendant. Attorney Coleman stated that she spent forty minutes with the defendant in a private room earlier that day and explained "how the court works . . . ." Attorney Coleman also stated that she recognized the defendant and that, following her private meeting with him, she believed that he understood the matters that they had discussed.

Thereafter, the court passed the matter to permit the defendant and Attorney Coleman an opportunity to pursue having the Office of the Chief Public Defender reassign the case to another special counsel. When the

court took up the matter later that day, Attorney Coleman informed the court that the violation of probation trial had been scheduled for January 19, 2023, and that Attorney Bevin Salmon, the supervising attorney for the Office of the Chief Public Defender in the judicial district of New Haven, geographical area number twenty-three, had spoken with the defendant but that there was "just no meeting of the mind[s] . . . ." Then, Attorney Coleman stated, "after twenty-five years, I think I know what I'm talking about and he's asking me to do something that I can't do for him. And maybe there is a lawyer out there that can get him what he wants, but it's not me. So, I'm going to be filing a motion to withdraw." Attorney Coleman informed the court that she intended to file the motion in "the next day or two." The defendant once more interjected, expressing his belief that Attorney Coleman was not "communicating properly" with him, that Attorney Coleman was making misrepresentations to him, and that he was not receiving due process. The court stated that it had "no objection" to the proposed motion provided that the Office of the Chief Public Defender was able to substitute another attorney to represent the defendant.

On January 10, 2023, Attorney Coleman filed a motion to withdraw. In her motion, Attorney Coleman stated that (1) the defendant has expressed his desire that she not represent him, (2) she had discussed the meetings that she had had with the defendant with the director of assigned counsel for the Office of the Chief Public Defender, (3) the Office of the Chief Public Defender had expressed its willingness to reassign the matter to another attorney if the court granted the motion, (4) there was a complete breakdown of the attorney-client relationship, and (5), in the absence of a change in representation, holding the upcoming hearing on the violation of probation charge, which was scheduled for

January 19, 2023, would amount to "a waste of the court's time . . . ."

On January 12, 2023, the court, *Iannotti, J.*, held a hearing on the motion to withdraw. Attorney Coleman expressed her belief, based on discussions with the Office of the Chief Public Defender that, if the court granted the motion, another attorney would be assigned to represent the defendant. In ruling on the motion, the court stated that it was mindful of the fact that the violation of probation hearing was scheduled for January 19, 2023, which was merely a week away. The court stated that it was inclined to deny the motion in light of the fact that that the presiding judge had communicated to him that the hearing on January 19, 2023, before Judge Fischer, "must go forward . . . ." The court noted that the state had made an offer to the defendant and that it was still available to him. Attorney Coleman stated that the defendant was aware of the offer but that she was not comfortable meeting alone with the defendant because, earlier that morning, she met with the defendant and that, during their discussion, "he put his hands in his pants and started fondling himself . . . ." Attorney Coleman stated that she feared for her safety.

The defendant repeatedly addressed the court to express his belief that he did not want Attorney Coleman to represent him. He stated that she was disrespectful to him, had lied to him, was lying to the court, and was upset with him for his comments at the pretrial hearing. The court responded: "Lawyers, as [Attorney] Coleman knows, [who have been] doing this for quite some time and quite successfully for some time, realize regardless of her making the motion [to withdraw] that there sometimes [are] individuals that they have to represent for a variety of reasons if they are less than comfortable representing them. Regardless of that, that does not mean . . . in this particular situation that she

will not zealously represent you even [though] she may not wish to do so. But she will.

"Now, she is your court-appointed lawyer. As the law states, and [Attorney] Coleman's aware of this and that's why she understands, that . . . you don't get to choose your court-appointed lawyer in this case." When the defendant stated that he wished to hire private counsel, the court told him that he had the right to do so by the hearing on January 19, 2023. The court denied the motion to withdraw, and Attorney Coleman stated on the record that she intended to zealously represent the defendant at the violation of probation trial.[2]

The defendant claims that the court's denial of Attorney Coleman's motion to withdraw her appearance amounted to an abuse of its discretion because (1) the court was presented with evidence of a complete breakdown in communication between him and Attorney Coleman, (2) the court suggested at the hearing on November 28, 2022, that it would be inclined to grant a motion to withdraw if the Office of the Chief Public Defender could reassign the case to another attorney, and (3) Attorney Coleman informed the court at the January 12, 2023 hearing on the motion to withdraw that the Office of the Chief Public Defender would assign the case to another attorney if the court granted the motion.

The following legal principles are relevant to our resolution of the defendant's claim. A motion to withdraw appearance is governed by Practice Book § 3-10

---

[2] As the defendant was leaving the courtroom, the court overheard the defendant state that he had not been afforded an opportunity to enter guilty pleas to resolve his pending criminal cases. The court asked Attorney Coleman to speak with the defendant concerning his willingness to enter guilty pleas. The court recalled the matter later that day. Attorney Coleman represented to the court that the defendant had not expressed a willingness to attempt to resolve any pending matter but that he was "irate" and had refused to talk to her.

which provides in subsection (a) that "[n]o motion for withdrawal of appearance shall be granted unless good cause is shown and until the judicial authority is satisfied that reasonable notice has been given to other attorneys of record and that the party represented by the attorney was served with the motion and the notice required by this section . . . ." "The standard of review regarding a motion to withdraw as counsel is abuse of discretion. The standard of reviewing both a motion by a defendant to discharge counsel and a motion by counsel to withdraw is the same. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel and, absent a factual record revealing an abuse of that discretion, the court's refusal to appoint new counsel is not improper. . . . Such a request must be supported by a substantial reason and, [i]n order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances. . . .

"In evaluating whether the trial court abused its discretion in denying [a] defendant's motion for substitution of counsel, [an appellate court] should consider the following factors: [t]he timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Gamer*, 152 Conn. App. 1, 33–34, 95 A.3d 1223 (2014). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion . . . means that the ruling appears to have been made on untenable grounds. . . . In determining whether the trial court

has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *State* v. *Olah*, 60 Conn. App. 350, 354, 759 A.2d 548 (2000).

We first address the defendant's reliance on the fact that, at the November 28, 2022 hearing, the court stated that it would not object to the motion to withdraw that Attorney Coleman intended to file if the Office of the Chief Public Defender agreed to appoint replacement counsel. As stated previously, Attorney Coleman informed the court at the pretrial hearing on November 28, 2022, that she intended to file a motion to withdraw within one or two days. The court's statements concerning how it might rule on the motion must be viewed in light of that representation. Attorney Coleman, however, did not file the motion to withdraw within one or two days but waited until January 10, 2023, just nine days prior to the scheduled violation of probation trial. Attorney Coleman did not provide an explanation for the timing of the motion. Instead, in connection with her motion, Attorney Coleman indicated that the Office of the Chief Public Defender was willing to appoint replacement counsel for the defendant if, in fact, the court granted the motion. The defendant's reliance on the court's statements concerning the motion at the hearing on November 28, 2022, is misplaced. We interpret the court's statements to be based on Attorney Coleman's representation that she would file a motion to withdraw within one or two days of the hearing. That timely motion was not forthcoming.

At the time that the court considered the motion to withdraw on January 12, 2023, the violation of probation trial was scheduled to take place in just seven days. Attorney Coleman did not set forth a reason for the timing of her motion, but it is undeniable that the delay in filing the motion meant that the court was faced with a motion to withdraw that was being made effectively

on the eve of trial. There is little question that granting the motion to withdraw at that late date would have required that the violation of probation trial be rescheduled and significantly delayed while new counsel was brought up to speed. As the court's ruling makes clear, the timing of the motion was central to the court's exercise of its discretion. This is because "[t]he trial court has the responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice." (Internal quotation marks omitted.) *State* v. *Stevenson*, 53 Conn. App. 551, 562, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999).

Thus, we turn to whether the court properly concluded that exceptional circumstances did not exist to justify granting the motion filed so close to trial. The court inquired into the defendant's complaints about Attorney Coleman, and it considered the information that Attorney Coleman conveyed to the court about her representation of the defendant. The defendant addressed the court to express the reasons for his dissatisfaction with Attorney Coleman. The court was in the best position to evaluate the reasons underlying the motion to withdraw. The record of proceedings amply reflects that the defendant had the capacity to communicate with the court, and he repeatedly stated that he did not want Attorney Coleman to continue to represent him. The defendant, however, merely articulated his belief that she was not providing him with adequate representation and was not providing him with information about his case. Attorney Coleman, however, refuted these representations. She believed that she had conveyed adequate guidance to him and, moreover, that he understood the matters that they had discussed. Furthermore, to the extent that Attorney Coleman stated as a ground for her motion that a breakdown in

communication existed, it is clear from a review of the record that the cause of this breakdown was the defendant's disruptive behavior toward her and his unwillingness to converse with her. Even after Attorney Coleman alerted the court to the defendant's suggestive behavior during her morning meeting with him on January 12, 2023, she stated that she would zealously represent him. Indeed, the record reflects that Attorney Coleman attempted to meet privately with the defendant on January 12, 2023, to discuss pleas, only to later alert the court that the defendant was irate and had refused to speak with her. See footnote 2 of this opinion. The record thus reflects that, although Attorney Coleman felt uncomfortable being in the defendant's presence, she continued to attempt to discuss matters of trial strategy with him. It was the defendant's choice, not Attorney Coleman's, to refuse to communicate.

In *State* v. *Gonzalez*, 205 Conn. 673, 535 A.2d 345 (1987), our Supreme Court rejected a defendant's claim that a complete breakdown in communication between himself and trial counsel warranted the appointment of new counsel. In addressing the claim raised in *Gonzalez*, our Supreme Court reasoned as follows: "While we have recognized that in some circumstances a complete breakdown in communication may require a new appointment . . . we agree with the state that this case does not present circumstances of this sort. A defendant is not entitled to demand a reassignment of counsel simply on the basis of a breakdown in communication which he himself induced. . . . The record before us indicates that the defendant was entirely responsible for whatever breakdown in communication occurred between himself and his attorney. . . . We therefore conclude that the trial court did not abuse its discretion in not permitting the defendant to discharge his lawyer." (Citations omitted; internal quotation marks omitted.) Id., 684; see also *State* v. *Robinson*, 227 Conn. 711, 727,

631 A.2d 288 (1993) (reassignment of counsel was not warranted based on breakdown in communication induced by defendant); *State* v. *Kerlyn T.*, 191 Conn. App. 476, 493–94, 215 A.3d 1248 (2019) (same), aff'd, 337 Conn. 382, 253 A.3d 963 (2020). This same reasoning applies in the present case to the court's denial of the motion to withdraw. Moreover, a change in counsel is not warranted based solely on the defendant's preference, for, "[a]lthough the constitution guarantees a defendant counsel that is effective, it does not guarantee counsel whom a defendant will like." *State* v. *Arroyo*, 284 Conn. 597, 645, 935 A.2d 975 (2007).

For the reasons we have discussed, we conclude that the court's denial of the motion to withdraw was not an abuse of its discretion.

II

Next, the defendant claims that the court improperly failed to conduct an adequate inquiry into his competency to stand trial and, consequently, erred in denying his motion for a competency evaluation pursuant to § 54-56d. We are not persuaded.

The following additional procedural history is relevant to this claim. In part I of this opinion, we discussed some of the events that took place at pretrial proceedings before the court, *Iannotti*, *J.*, on November 28, 2022, and January 12, 2023. On January 19, 2023, the violation of probation trial was scheduled to proceed before the court, *Fischer*, *J.* Prior to the start of the proceeding, the court learned from the marshal and representatives of the Department of Correction that the defendant, who was incarcerated, refused to be transported to the courthouse and that court personnel had established a video connection to the correctional facility where the defendant was incarcerated so that he could participate virtually in the trial. At the beginning of the proceeding, a correction officer informed

the court that the defendant had left the room in which he could have participated virtually in the trial. Attorney Coleman informed the court that, that morning, the defendant, via video, observed her presence and asked what she was doing in the courtroom. When Attorney Coleman informed him that she was there to represent him at the trial on the violation of probation charge, he stated that he was there to attend a hearing on a motion to dismiss and that she was not his attorney. The defendant then walked out of the room.

Ultimately, the defendant returned and addressed the court. The defendant stated that he had just been made aware that a hearing was to take place and that he believed that the case had been continued because Attorney Coleman had filed a motion to withdraw. The defendant stated that he did not see "eye to eye" with Attorney Coleman and that she failed to file motions pertaining to his case. He stated that she did not convey any plea offer to him and that she failed to show him a video related to one of the criminal charges pending against him. The defendant stated that he was dissatisfied with Attorney Coleman, who, in his view, was not acting in his best interest. The defendant also stated that he did not feel safe being transported to the courthouse because he had been assaulted by a marshal who claimed that the defendant had assaulted him first.

The court addressed the defendant, noting that Judge Iannotti had denied Attorney Coleman's motion to withdraw and that the violation of probation trial had been scheduled for quite some time. The court informed the defendant that the trial would take place that day, the state was ready to proceed, Attorney Coleman was going to represent him, and the defendant had the option of participating virtually. After the defendant continued to protest that Attorney Coleman was not his attorney, the court reiterated that the issue had been resolved by Judge Iannotti and that Judge Iannotti had

made it clear on the record that the violation of probation trial was scheduled for January 19, 2023. Thereafter, the defendant left the room from which he was able to participate virtually in the trial and returned to his jail cell. Correction officers notified the court that the defendant stated to them that the hearing would continue without him and that he was aware that he was not going to be part of the trial. The court asked the correction officers, in the event that the defendant had a change of heart with respect to exercising his right to participate in the proceeding virtually, to notify the court immediately.

At that juncture, the following colloquy between Attorney Coleman and the court occurred:

"Attorney Coleman: Your Honor, if I could just address the court. I've been representing [the defendant] since last October and I'm assigned counsel on this matter. He had some previous counsel, public defenders, and [the Office of the Chief Public Defender had to assign the case to a special public defender]. And based on my interactions with him . . . he has said we don't get along. That's not the issue, Judge. I'm concerned about some of his mental health issues. I truly believe he understands the charges, but if we ever went to trial, I don't think that he could aid in his defense, so I'm requesting a [competency evaluation under § 54-56d] at this point especially based on [the fact that] he told me today that we're here for my motion to dismiss.

"The Court: Has any other—have you ever made this request before, Attorney Coleman?

"Attorney Coleman: No, Your Honor. In looking back at his records, I don't know if there's ever been one.

"The Court: All right.

"Attorney Coleman: And . . . I . . . .

"The Court: So, you have no evidence of any other counsel or in any other proceedings, my understanding is he has other files—

"Attorney Coleman: And I have all of his files, Judge.

"The Court: —that there's never been a request for a [competency evaluation under § 54-56d]?

"Attorney Coleman: Your Honor, I always use § [54-56d] judiciously and . . . since I started representing him back in October, I see a decompensation in him, Judge. And, I mean, I've met with him two times already. Forty-five minutes the first time on [October 31, 2022], and forty minutes on [November 28, 2022], and had extensive discussions with him. And there was a very good offer for him and actually Attorney Salmon, [the supervising attorney with the Office of the Chief Public Defender], went down and talked to him to help him to understand and I just don't know if he's getting the second part of the equation, Judge. I just don't know if he can aid in his defense especially [with] him walking off.

"The Court: Well, he wouldn't be the first disruptive defendant in a criminal proceeding and he won't be the last, but disruptive behavior is . . . not correlating to a direct § [54-56d] and . . . I would assume there's been many good offers made by the State of Connecticut and judicial offers made to the defendant that have been rejected by defendants which is their perfect constitutional right. And . . . I don't want to hear anything about an offer made in this case . . . .

"Attorney Coleman: I—

"The Court: No. I understand that and you haven't [divulged such information to the court]. I just wanted to underline that. [It's] that he declined to accept an offer to resolve the case. That's his perfect right. But I'm going to deny your request for a hearing. Disruptive

behavior . . . is not tantamount to a § [54-56d]. You put on the record what you felt are the specific issues that . . . entitled you to that. I respectfully disagree, you know, especially with the timing of this. Again, disruptive behavior, yelling at people, does not entitle him to that hearing.

"So, with that, I think the [record is] protected . . . the defendant was aware that this hearing was going to proceed without him on it. He has the perfect right to participate. If he changes his mind, we'll hear from [the Department of Correction]."

The defendant argues that the court failed to conduct an adequate inquiry into the motion for a competency evaluation. The defendant relies on the information that was known to the court at the time it considered the motion, including the statements that he made to the court about the hearing and Attorney Coleman, the fact that he was a probationer who was subject to mental health evaluation, his refusal to be transported to court on January 19, 2023, his refusal to participate virtually in the trial, and, most importantly, Attorney Coleman's representations to the court in support of the motion. He argues that this information "suggested [his] lack of ability to communicate rationally with Attorney Coleman and assist in his own defense." The defendant argues that this information sufficiently called into doubt his competence and necessitated further investigation by the court. Instead, the defendant argues, the court "engaged in no inquiry in response to Attorney Coleman's representations but instead jumped to the conclusion that [he] was being disruptive and obstinate." On the basis of these facts, the defendant argues that the court improperly denied the motion for a competency evaluation.

The following legal principles guide our analysis. "We review the court's ruling on a motion for a competency

evaluation under the abuse of discretion standard. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . .

"[T]he conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. . . . This rule imposes a constitutional obligation, [on the trial court], to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial . . . . [Section] 54-56d (a) codified this constitutional mandate, providing in relevant part: A defendant shall not be tried, convicted or sentenced while the defendant is not competent. [A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"This statutory definition mirrors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). According to *Dusky*, the test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. . . .

"Although § 54-56d (b) presumes the competency of defendants, when a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination. . . . Thus, [a]s a matter of due process, the trial court is required to

conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . . The trial court should carefully weigh the need for a hearing in each case, but this is not to say that a hearing should be available on demand." (Citation omitted; internal quotation marks omitted.) *State* v. *Norris*, 213 Conn. App. 253, 268–69, 277 A.3d 839, cert. denied, 345 Conn. 910, 283 A.3d 980 (2022).

The defendant argues that the present case is factually analogous to *State* v. *Dort*, 315 Conn. 151, 106 A.3d 277 (2014), in which our Supreme Court affirmed this court's judgment, albeit on different grounds, reversing a defendant's judgment of conviction on the ground that the trial court improperly denied his request for a competency hearing. Id., 153–55. Our Supreme Court concluded that the trial court in *Dort* abused its discretion in denying the motion for a competency evaluation because it did not afford due weight to defense counsel's statements in support of the motion and, instead, relied heavily on a prior competency report concerning the defendant. Id., 178. The court also reasoned that, under the facts present, the trial court could not properly have relied on its own observations of the defendant over the representations made by defense counsel. Id., 182.

We are not persuaded by the defendant's reliance on *Dort*. Unlike in *Dort*, the factual representations made by defense counsel in support of the motion for a competency evaluation were less specific or detailed than

those made by defense counsel in *Dort*. In *Dort*, defense counsel made detailed allegations, including that the defendant had a fundamental misunderstanding as to " 'what can be put forward as a defense in this case' " and that the defendant did not comprehend " 'the seriousness of the charges in light of the defense.' " Id., 158. Defense counsel also stated that " 'attempting to extrapolate the relevant information from [the defendant] in order for [counsel] to go forward with his defense is virtually impossible.' " Id. Defense counsel informed the court that the defendant did not comprehend the facts that were relevant to the state's case. Id., 159. Defense counsel stated that, " 'I cannot for the life of me extrapolate much more in the way of facts from him at this juncture.' " Id., 174–75.

In the present case, Attorney Coleman stated that she had observed a "decompensation" in the defendant since she began representing him in October, 2022. Attorney Coleman's opinion of the defendant's mental health appears from her statements to have been based solely on just two discussions that she had with him, one lasting forty-five minutes in October, 2022, and another lasting forty minutes in November, 2022. In terms of specific facts on which her opinion was based, Attorney Coleman stated that there had been "a very good offer" that the defendant refused to accept and that he chose not to attend the trial that day.

These specific factual allegations are vastly different than the type of representations made by the defense counsel in *Dort*. In *Dort*, counsel's representations were related to the core concerns enunciated in *Dusky*, namely, whether the defendant had a rational and factual understanding of the proceedings against him. *State v. Dort*, supra, 315 Conn. 170–71, 182–83; *Dusky* v. *United States*, supra, 362 U.S. 402. Here, counsel related that the defendant chose not to accept a plea offer, as was his right. She also noted that he chose not to attend

the trial, which was also his right. Although she disagreed with both of these decisions made by the defendant, they, viewed in isolation or in conjunction with the other facts known to the court, do not reasonably suggest that the defendant lacked an understanding of the facts of the case or the nature of the proceeding. It is also significant to note that, although Attorney Coleman questioned whether the defendant could aid in his defense, such belief appears to have been primarily based on the fact that he chose not to attend the proceeding that day. Moreover, before raising the motion for a competency evaluation, Attorney Coleman stated her belief that the defendant understood the charges against him.

Turning to other information known to the court, we note that, unlike in *Dort*, in the present case there was no evidence of a prior mental health evaluation on which Judge Fischer relied. Instead, although Judge Fischer did not canvass the defendant, he did engage in a lengthy colloquy with the defendant with respect to whether the defendant would participate remotely in the hearing that day. Although, as the court aptly stated, the defendant had engaged in disruptive behavior and repeatedly expressed both his dissatisfaction with Attorney Coleman and his belief that she should not be his attorney, such conduct and beliefs did not necessarily reflect incompetency. See, e.g., *State* v. *Glen S.*, 207 Conn. App. 56, 77, 261 A.3d 805 ("defendant's obstreperous, uncooperative or belligerent behavior . . . and hostility toward [his] attorney [does] not necessarily indicate defendant's incompetency" (internal quotation marks omitted)), cert. denied, 340 Conn. 909, 264 A.3d 577 (2021), cert. denied,      U.S.     , 142 S. Ct. 2685, 212 L. Ed. 2d 768 (2022); *State* v. *Johnson*, 22 Conn. App. 477, 489, 578 A.2d 1085 (defendant's uncooperative behavior at trial, including refusal to

return to court, did not require competency evaluation), cert. denied, 216 Conn. 817, 580 A.2d 63 (1990). Unlike in *Dort*, the record reflects that the court made reference to its own observations of the defendant's behavior when ruling on the motion for a competency evaluation. In contrast with this court, the trial court was able to observe his demeanor and converse with the defendant. From our examination of the record, the trial court reasonably could have determined that the defendant's statements to the court did not reflect an inability to grasp the nature of the proceeding or the facts related to the state's case. There also is no indication that he could not assist with his defense, only that he chose not to do so because he and Attorney Coleman did not "see eye to eye" and he believed that she was "working with the prosecution." Furthermore, the record reflects that the defendant made his decision not to cooperate with and assist Attorney Coleman as early as his November 28, 2022 appearance before Judge Iannotti, long before when Attorney Coleman became concerned about his "decompensation."

In sum, the reasons underlying the court's denial of the motion for a competency evaluation in the present case are distinguishable from those present in *Dort*. Here, the court was not presented with specific facts that pertained to the issue of his competency to stand trial. Moreover, the court based its decision, in part, on its observations of the defendant's conduct that day. Although Attorney Coleman questioned whether the defendant could aid in his defense, our Supreme Court has observed that "a trial court need not automatically defer to the opinion of defense counsel on the matter of the defendant's competence . . . ." *State* v. *Dort*, supra, 315 Conn. 182.

For the foregoing reasons, we conclude that the court properly evaluated the motion for a competency evalua-

tion and did not abuse its discretion in denying the motion.

The judgment is affirmed.

In this opinion the other judges concurred.