******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHRISTOPHER BURGOS *v.* COMMISSIONER
OF CORRECTION
(AC 46538)

Elgo, Moll and Pellegrino, Js.

*Syllabus*

The petitioner, who had been convicted of sexual assault in the first degree, risk of injury to a child, aggravated sexual assault of a minor and attempt to escape from custody, appealed, on the granting of certification, from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claimed that the court improperly concluded that he failed to establish that his criminal trial counsel rendered ineffective assistance by stipulating to the petitioner's competence to stand trial. *Held*:

Even assuming, without deciding, that it was deficient performance for the petitioner's criminal trial counsel to stipulate to the petitioner's competency under the circumstances presented by this case, the habeas court properly concluded that the petitioner failed to prove that he had been prejudiced thereby.

Argued September 16—officially released December 24, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Mary Boehlert*, assigned counsel, for the appellant (petitioner).

*Alexander A. Kambanis*, deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Christopher Burgos, appeals from the judgment of the habeas court denying his

amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he failed to establish that his criminal trial counsel rendered ineffective assistance by stipulating to the petitioner's competency to stand trial. We disagree and, accordingly, affirm the judgment of the habeas court.

As the court noted in its memorandum of decision, the petitioner "was convicted by a jury in the judicial district of Hartford of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), one count of aggravated sexual assault of a minor in violation of General Statutes § 53a-70c (a) (1), and, in a separate information, one count of attempt to escape from custody in violation of General Statutes §§ 53a-49 (a) (2) and 53a-171 (a) (1). At trial, he was represented by Attorney William O'Connor. The trial court . . . sentenced [the petitioner] to a total effective sentence of fifty years [of] incarceration followed by five years [of] special parole."

On direct appeal to this court, the petitioner raised several claims regarding his competency and the process by which he was found competent to stand trial, including, inter alia, that "the trial court erred in not sua sponte ordering pretrial and posttrial competency hearings and canvassing him on his purported right to testify at those hearings . . . ."[1] *State* v. *Burgos*, 170

---

[1] The petitioner also claimed that the court (1) committed plain error by permitting defense counsel to waive the reconsideration of competency hearing because General Statutes § 54-56d (k) allows only the defendant to waive such a hearing; (2) violated his due process rights and committed plain error by not ordering, sua sponte, an evidentiary hearing to evaluate his competency; and (3) violated his due process rights and committed plain error by failing to order a retrospective competency hearing in light of his posttrial conduct. See *State* v. *Burgos*, 170 Conn. App. 501, 512–13, 155 A.3d 246, cert. denied, 325 Conn. 907, 156 A.3d 538 (2017).

Conn. App. 501, 505, 155 A.3d 246, cert. denied, 325 Conn. 907, 156 A.3d 538 (2017). In deciding those claims, this court set forth the following relevant facts. "On September 1, 2011, the [petitioner] was arraigned and appointed counsel from the public defender's office. During arraignment, [O'Connor] noted that the [petitioner] was a 'client' of a mental health facility and that '[h]e appears to have been steady with his treatment there.' The court, *Newson, J.*, stated that 'mental health attention should be noted on the [mittimus].' During the [petitioner's] first six court appearances, between September 1, 2011 and December 12, 2011, his courtroom behavior was unremarkable.

"On January 17, 2012, the [petitioner] was unable to be transported to court because 'while in the custody of [the Department of Correction (DOC)] he covered himself in feces and refused to be transported.' [O'Connor] moved for a competency examination pursuant to General Statutes § 54-56d, and the court granted the motion and issued an order for a competency examination.[2] On March 28, 2012, the Department of Mental Health and Addiction Services, Office of Forensic Evaluations, submitted a competency report, in which the clinical team unanimously concluded that, while the [petitioner] was presently not competent to stand trial,

---

[2] General Statutes § 54-56d provides in relevant part: "(b) A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. . . .

"(c) If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency.

\* \* \*

"(e) . . . A defendant and the defendant's counsel may waive the court hearing only if the examiners, in the written report, determine without qualification that the defendant is competent. . . ."

there was a substantial probability that he could be restored to competency within the statutory time frame. On March 29, 2012, the court held a competency hearing, at which the court agreed with the clinical team's assessment, ordered that the [petitioner] receive treatment in an inpatient setting, and continued the case until May 31, 2012.

"On May 25, 2012, Dr. Mark S. Cotterell, a forensic psychiatrist, submitted a second competency report to the court, in which he concluded that the [petitioner] had not yet been restored to competency but was still capable of restoration within the statutory time frame. Cotterell's report acknowledged that the [petitioner] had a history of mental health treatment and engaging in behaviors indicative of mental illness. However, Cotterell also observed that 'there appears to be a volitional component to [the petitioner's] presentation. It appears that he knows more than he is willing to admit.' On May 31, 2012, the court held a competency reconsideration hearing at which it concluded that the [petitioner] was not competent but was restorable to competency and ordered the [petitioner] to continue to receive treatment in an inpatient setting. See General Statutes § 54-56d (k).

"On August 16, 2012, Cotterell submitted a third competency report to the court in which he concluded that the [petitioner] was competent to stand trial. In that report, Cotterell noted that the [petitioner] had consistently refused to participate in formal evaluations. However, Cotterell detailed aspects of the [petitioner's] behavior that indicated that 'he has the capacity to understand his legal situation and the capacity to assist his attorney if he were to choose to do so.' The report observed that 'there is definitely a volitional component' to [the petitioner's] refusal to engage in a formal evaluation and that '[i]t is clear that he knows more than he is willing to admit.' The report also stated that '[the

petitioner] is not currently taking psychiatric medication, and he has not demonstrated any symptoms of a serious mental illness that would require such treatment.' On August 31, 2012, the court held a competency reconsideration hearing to reassess the [petitioner's] competency to stand trial. At the hearing, Cotterell's report was marked as an exhibit, and [O'Connor] and the state stipulated that the [petitioner] was competent to stand trial. The court then found that the [petitioner] was competent to stand trial based on Cotterell's report.

"On September 26, 2012, the [petitioner] attempted to escape from the custody of the judicial marshals after being brought into the courtroom. When court reconvened after a recess, the [petitioner] was not present. The court indicated that he was 'not behaving in any appropriate manner in the lockup,' was 'spitting at the cell door' and was 'giving the correction officers a difficult time . . . .' [O'Connor], who had represented the [petitioner] over the last year, agreed that the [petitioner] 'appear[ed] to be in a somewhat agitated state.' The court stated that the [petitioner's] next court appearance would be conducted by video conference 'to minimize the further potential of any harm to any correction[al] and/or judicial marshal staff.' Despite this arrangement, the [petitioner's] behavior prior to the next two court hearings prevented him from participating in those hearings, even via video conference.

"Trial commenced on October 9, 2013. When court reconvened after the first morning recess, the court announced that there had been 'a major problem with the [petitioner]' because '[h]e decided to flush his jumpsuit down the toilet' and urinated on the floor. The court directed [O'Connor] to find substitute clothing for him and stated that 'if [the petitioner] continues to act up, he will have handcuffs put on eventually.' The court observed that '[the petitioner] has been behaved in the courtroom and I'm not concerned about his

behavior in the courtroom.' The court further noted that problems arose only when he leaves the courtroom. While the court was discussing the [petitioner's] conduct with [O'Connor], the [petitioner] interjected that he was acting out when outside the courtroom 'because [the judicial marshals] put handcuffs on me in a—in a secured cell where they ain't supposed to do that.' The court admonished the [petitioner] that the judicial marshals were the ones in control, not him, and gave [O'Connor] an opportunity to speak with the [petitioner]. The jury was then brought back into the court and evidence continued without the [petitioner] being present in the courtroom. Later that morning, after another recess, the court observed that '[the petitioner] is back in the courtroom. . . . [He] has been very well behaved in court. And that's what I see and that's what I care about, primarily. So, there has been no problem in the courtroom itself.'

"On October 10, 2013, the second day of trial and the final day of evidence, the [petitioner] testified with respect to the escape charge. After [O'Connor] declined to conduct a redirect examination of the [petitioner], the [petitioner] interjected: 'You're an idiot.' The court excused the jury and engaged in the following colloquy with the [petitioner] after he was returned to the defense table:

" 'The Court: . . . [Y]our last comment was totally gratuitous.

" '[The Petitioner]: I'm sorry, ma'am. I'm on frustration, I kind of lost a little control. I apologize. It's kind of hard, you know, to sit there and like, you know.

" 'The Court: Your apology is accepted. You don't have to go any further. However, do be advised that calling anyone [names], your attorneys, the state's attorney, anyone in the building, that is unacceptable, and if you weren't facing [such serious charges], you would

be facing a contempt charge. But you did apologize, and it's just not worth even considering the contempt because you are facing so many other serious charges. All right, sir?

" '[The Petitioner]: Yes.

" 'The Court: But thank you for the apology.

" '[The Petitioner]: All right.'

"The jury then was brought back into the courtroom, and the [petitioner] did not make any other comments or cause any additional disruptions. On October 11, 2013, the third and final day of trial, the jury heard closing arguments from counsel and was charged by the court. The [petitioner] did not make any comments or cause any disruptions in court that day." (Footnote added; footnotes omitted.) *State* v. *Burgos*, supra, 170 Conn. App. 508–12.

After his trial and conviction, on May 1, 2017, the petitioner, acting in a self-represented capacity, filed an application for a writ of habeas corpus.[3] The petitioner then applied for and received appointed counsel. He thereafter filed an amended petition in 2020, claiming that O'Connor rendered ineffective assistance of counsel by stipulating to the petitioner's competency to stand trial.[4] The court heard testimony on January 3, 2023, from O'Connor, Dr. Eric Frazer, and the petitioner. The petitioner's counsel also submitted exhibits, all without objection, and both parties filed posttrial briefs.

---

[3] We note that the petitioner also filed a petition for a writ of habeas corpus in the United States District Court for the District of Connecticut in May, 2021, alleging, inter alia, ineffective assistance of counsel and due process violations related to his competency. That petition was dismissed, for failure to exhaust state court remedies, in June of that same year. See *Burgos* v. *Connecticut*, Docket No. 3:21-cv-00688 (VLB), 2021 WL 2515730 (D. Conn. June 17, 2021).

[4] In his amended petition, the petitioner also alleged ineffective assistance stemming from trial counsel's failure to challenge the admissibility of DNA evidence. The petitioner withdrew that claim prior to trial.

In its memorandum of decision dated March 3, 2023, the court explained that O'Connor made a motion for a competency evaluation because "he had concerns about [the petitioner's] ability to understand the seriousness of the situation and to work with him to resolve the matter. This was based on his interactions with [the petitioner] and his impression that [the petitioner] was young, oppositional and did not want to engage in serious conversations about his situation. He believed [the petitioner] was experiencing psychiatric symptoms. He and [his social worker] met with [the petitioner] and both agreed that [the petitioner] might not be competent." O'Connor then reviewed the first competency report and, "[b]ased on the [first competency] report, he asked the trial court to find [the petitioner] not competent in accordance with the report." O'Connor retained a defense expert, sometime in 2011, to evaluate the petitioner's competency. At the petitioner's habeas trial, O'Connor testified that this expert would not have testified that the petitioner was incompetent and that the defense expert, in fact, agreed that "there was a volitional aspect" to the petitioner's presentation.

The court further noted that, at the time of the second competency hearing, the petitioner "had been cooperative with efforts to restore him to competency and had been taking his medication, controlling his behavior and attending groups. He had further participated in psychological testing. [Cotterell] had conducted a competency evaluation and as a result concluded that [the petitioner] had not yet been restored to competency."

At the third competency hearing, Cotterell's report found the petitioner to have been restored to competency. As the court noted, the petitioner was no longer taking medication and was interviewed by a psychiatrist on June 4, 2012; the psychiatrist did not note any symptoms of psychosis, mania or depression. The court further found that the report indicated that the petitioner

"had the ability to cooperate with his attorney, but he chose not to [do so]." Given the results of this report, the court noted that, according to O'Connor, "the stigma of malingering makes it extremely difficult to convince a judge that the individual is not malingering when Whiting [Forensic Hospital] says they are. Given that [the petitioner] had already been transported to DOC, Whiting's conclusion that he was malingering and was competent, and knowing the presiding judge, [O'Connor] believed that challenging competency would be futile."

The court summarized the testimony of Frazer, who reviewed the various competency reports, court transcripts, police records, the amended petition, and an April 15, 2013 psychological evaluation of the petitioner. Frazer believed that the third competency report did not reach the correct conclusion, testifying that "the refusal to take . . . medication is a symptom of a mental illness by itself and specifically . . . in light of [the petitioner's] documented mental health history." According to Frazer, the refusal to consent to medication, as well as inconsistent self-reporting on mental health, are, themselves, consistent with mental illness. Thus, Frazer noted that, although the competency reports noted manipulative behavior, such behavior could also be a symptom of mental illness. As the court summarized, "Frazer ultimately opined that it was extremely unusual, given the circumstances of [the petitioner's] mental health history, his prior determinations that he was not competent, his refusal to take medication, [and] the lack of involuntary medication being sought, for him to then summarily be found competent."

The petitioner testified at the habeas trial as well. The petitioner was placed in the care of the Department of Children and Families when he was ten years old and received residential treatment. He was hospitalized several times and the petitioner also testified that his

first mental health diagnosis was schizophrenia, when he was thirteen years old.

The court summarized the petitioner's testimony of his experience at Whiting, noting that the petitioner claimed that he was "unable to convey any symptoms he was experiencing because he was heavily medicated at that time. He testified that he did not show up to several court dates after his escape attempt because he was concerned about what would happen to him. He felt out of control through the pretrial and trial stages. He described it as moving his arm and not feeling like it was him who was moving the arm."

The court nonetheless concluded that the petitioner had not established deficient performance on the part of his trial counsel or prejudice resulting therefrom. Although the court found Frazer's testimony "persuasive" in establishing that there was sufficient basis "to consider" a challenge to the third competency report's finding that the petitioner was competent, the "tactical decision" not to challenge the third competency report's determination that the petitioner was competent was "reasonable." As the court noted, "[w]hile it can always be argued that [O'Connor] should have contested the competency report, that is not the same as saying that his decision not to was unreasonable." The court further concluded that, even if O'Connor had performed deficiently, the petitioner had not proven that he was prejudiced—that there was a reasonable probability of a different outcome—as a result of any alleged deficiency on the part of O'Connor. The court described the scenario: "The 'different outcome' that [the petitioner] alleges is him being found 'not yet competent' at the hearing, which would have been conducted had [O'Connor] not stipulated to his competency. He does not allege that the 'different outcome' is that he would have been found not competent and not restorable or that

he would have been found not guilty by reason of mental disease or defect at trial.''

The court, therefore, denied the amended petition for a writ of habeas corpus. The court subsequently granted the petitioner's motion for an extension of time to file a petition for certification to appeal and then granted the petition for certification to appeal. This appeal followed.

On appeal, the petitioner claims that the court improperly concluded that he failed to establish that O'Connor rendered ineffective assistance of counsel in stipulating to the petitioner's competency to stand trial. We disagree.

At the outset, we note that every defendant has, under the sixth and fourteenth amendments to the United States constitution as well as article first, § 8, of the Connecticut constitution, a right to adequate and effective assistance of counsel at all critical stages of a criminal proceeding. See *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 775, 138 A.3d 908 (2016); see also *Strickland* v. *Washington*, 466 U.S. 668, 685–86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). ''The standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . Under the [test set forth in *Strickland* v. *Washington*, supra, 687], when a petitioner alleges ineffective assistance of counsel, he must establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2)

counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Furthermore, because a successful petitioner must satisfy both prongs of [that] test, failure to satisfy either prong is fatal to a habeas petition." (Internal quotation marks omitted.) *Foster* v. *Commissioner of Correction*, 217 Conn. App. 658, 667, 289 A.3d 1206, cert. denied, 348 Conn. 917, 303 A.3d 1193 (2023). Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." (Internal quotation marks omitted.) *Bethea* v. *Commissioner of Correction*, 36 Conn. App. 641, 644, 652 A.2d 1044, cert. denied, 232 Conn. 918, 655 A.2d 260 (1995).

The criminal trial of an incompetent defendant violates due process. See *Cooper* v. *Oklahoma*, 517 U.S. 348, 354, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996); see also General Statutes § 54-56d (a). "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope* v. *Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); see also *State* v. *Randolph*, 227 Conn. App. 732, 751, 322 A.3d 1080 ("the test for competency must be whether [the individual] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him" (internal quotation marks omitted)), cert. denied, 350

Conn. 920, 325 A.3d 218 (2024). "Even if the petitioner [can] demonstrate to the habeas court that he was either mentally ill or mentally disabled at the trial, this would not suffice for purposes of prejudice unless he showed that his condition precluded him from assisting in his own defense. Such a showing would allow a habeas court to conclude that, because of the unprofessional error of trial counsel in not requesting an examination under § 54-56d, the petitioner was unable to assist in his own defense, thereby sustaining an actual prejudice and not a speculative one." (Footnote omitted.) *Bethea* v. *Commissioner of Correction*, supra, 36 Conn. App. 645–46.

In the present case, the court denied the amended petition on both prongs of the *Strickland* test, finding that, although Frazer's testimony was "persuasive" and there was "sufficient basis to consider a challenge to [the petitioner's] competency," it was still a "reasonable tactical decision" to forgo challenging the petitioner's competency. Assuming, without deciding, that it was deficient performance for counsel to stipulate to competency under the circumstances presented by this case, the petitioner still must demonstrate actual prejudice so as to warrant reversal of the court's decision to deny his amended petition.[5]

---

[5] We note that the petitioner argues that the standard applied by the habeas court in this case is "unfair and unjust" because it required him to demonstrate that, but for the ineffectiveness of his counsel, he would have been found both incompetent and nonrestorable. In its memorandum of decision, the court noted that our Supreme Court has held that proving prejudice in order to defeat procedural default in the context of a freestanding due process claim requires a showing that a petitioner was both not competent and not restorable. The court therefore reasoned that this standard "must be the same" to prove prejudice in an ineffective assistance of counsel claim. It is true that, where the petitioner had the burden of overcoming procedural default in the context of a freestanding due process claim, our Supreme Court has noted that, "[t]*o excuse a defendant from standing trial*, the trial court is required to find both that the defendant is incompetent and not restorable to competency. . . . Because the prejudice prong of the cause and prejudice standard requires the petitioner to show that the trial court would have found him incompetent had the issue been raised at trial

or on direct appeal, this inquiry must necessarily include the additional showing that the petitioner was not restorable to competency at the time of trial." (Citation omitted; emphasis added.) *Saunders* v. *Commissioner of Correction*, 343 Conn. 1, 29 n.15, 272 A.3d 169 (2022). We are not persuaded that our Supreme Court's requirement that a petitioner prove both incompetency and nonrestorability in order to establish prejudice in the context of a claim of procedural default applies in this case. In *Saunders*, the petitioner effectively asserted a substantive due process violation, claiming that he had been incompetent at trial and should be excused from standing trial. Here, the petitioner pursues an ineffective assistance of counsel claim, alleging that, but for his attorney's deficient performance in stipulating to his competency, he would have been found incompetent to stand trial.

In arguing that the *Saunders* prejudice standard applies, the respondent, the Commissioner of Correction, has not provided this court with any authority indicating that the petitioner would have to demonstrate both incompetency *and* nonrestorability in the context of an ineffective assistance of counsel claim. Indeed, cases cited by the respondent, as well as those disclosed during our own research, suggest that restorability is not properly a consideration in the ineffectiveness of counsel context. See, e.g., *United States* v. *Avila-Gonzalez*, 757 Fed. Appx. 353, 357 (5th Cir. 2018) (In the context of a failure to investigate competency claim, in addition to proving deficient performance, "[the petitioner] must also demonstrate a reasonable probability that the court would have found him incompetent. Otherwise, there is no prejudice."); *Hummel* v. *Rosemeyer*, 564 F.3d 290, 303 (3d Cir.) (requiring petitioner alleging ineffectiveness of counsel in stipulating to competency to demonstrate reasonable probability he would have been found incompetent to stand trial), cert. denied sub nom. *Pitkins* v. *Hummel*, 558 U.S. 1063, 130 S. Ct. 784, 175 L. Ed. 2d 541 (2009); *Eddmonds* v. *Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996) ("[o]nly if there is a reasonable probability that [the petitioner] was not fit . . . will confidence in the outcome of the trial be deemed undermined for purposes of an ineffective assistance claim" (internal quotation marks omitted)), cert. denied sub nom. *Eddmonds* v. *Washington*, 520 U.S. 1172, 117 S. Ct. 1441, 137 L. Ed. 2d 548 (1997); *Futch* v. *Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (to demonstrate prejudice from counsel's failure to investigate competency, it is necessary to show that there is reasonable probability that psychological evaluation would have revealed that petitioner was incompetent to stand trial); *Dadabo* v. *Secretary, Dept. of Corrections*, Docket No. 8:15-cv-2250-T-33 (TGW), 2017 WL 238279, *17–18 (M.D. Fla. January 19, 2017) (petitioner did not establish prejudice by alleged ineffectiveness of counsel because he did not demonstrate that he would have been found incompetent to stand trial); *Hampton* v. *State*, 219 So. 3d 760, 770–72 (Fla. 2017) (no discussion of restorability in prejudice analysis, where petitioner alleged ineffectiveness of counsel in stipulating to competency); *State* v. *Dixon*, 254 So. 3d 828, 835–36 (La. App. 2018) (no discussion of restorability where petitioner's counsel stipulated to competency), cert. denied, 298 So. 3d 176 (La. 2020). Because § 54-56d provides for a determination of restorability to protect a defendant's due process right to participate in his own defense, a standard of nonrestorability would eliminate that right if a criminal defendant was in fact restorable,

The petitioner claims that he met his burden simply by pointing to various reasons O'Connor should not have stipulated to his competency. Additionally, the petitioner claims that trial counsel was ineffective for failing to consult with him before so stipulating.[6] The petitioner claims that these two lapses of performance by counsel resulted in prejudice in that, but for these alleged lapses, the result of the proceeding would have been different. We are not convinced, however, that, even if we agreed with the petitioner that O'Connor's performance was deficient, there was any evidence that the petitioner was unable to assist counsel in his defense or that he could not understand the nature of the proceedings against him.

The petitioner has provided little in support of the claim that he has met the appropriate standard, such that he can demonstrate prejudice under *Strickland*. The petitioner points to his medical and psychiatric history, as well as the three competency reports prepared prior to his trial, arguing that "[t]he petitioner's mental illness did not start and stop at the August, 2012 hearing" and that he was diagnosed with schizophrenia around age thirteen or fourteen. We iterate, however, that a psychiatric diagnosis and history are not, on their own, evidence of incompetency to stand trial. *Bethea* v. *Commissioner of Correction*, supra, 36 Conn. App.

even if incompetent *to stand trial at the time that the trial was actually conducted.* In addition, because we conclude that the petitioner has not demonstrated that there is a reasonable probability that he would have been found incompetent; see *Bethea* v. *Commissioner of Correction,* supra, 36 Conn. App. 645–46 (petitioner must demonstrate that he was incapable of assisting in his own defense to establish prejudice); we need not reach the issue of restorability. We note, nonetheless, that, during oral argument before this court, counsel for the petitioner conceded that the record contains no evidence that he was not restorable.

[6] At oral argument before this court, counsel for the respondent, the Commissioner of Correction, agreed "full heartedly" that it would be "wrong" for an attorney to stipulate to a client's competency without discussing that decision with the client.

645–46 (mental illness or disability alone is insufficient to establish prejudice unless condition precludes petitioner from assisting in his own defense).

The petitioner also claims that the third competency report changed his diagnosis "without explanation." Similarly, the petitioner claims that there are "inconsistencies" and "irregular changes in diagnosis" across the reports, noting that the third competency report contains previously undocumented alcohol, cannabis and cocaine abuse history, dropping the diagnosis of schizoaffective disorder. While we acknowledge that Frazer testified that the petitioner's "mixed presentation"—his inconsistent engagement and cooperation with treatment—can result from either volitional malingering or psychiatric illness, this possibility does not, itself, demonstrate that the petitioner was incapable of assisting in his own defense or understanding the case against him. Moreover, the one consistency across all three pretrial competency reports, as well as the defense expert's opinion, was that there was some volitional aspect to the petitioner's behavior.

The petitioner has not pointed to any evidence in the record that he was unable to assist O'Connor or understand the nature of the proceedings against him. Indeed, the petitioner testified on his own behalf at trial and engaged in an apologetic colloquy with the court after his one outburst. It is true that the petitioner did act out on the first day of trial, but this was outside the courtroom itself. As the court noted at the time, the petitioner "behaved in the courtroom" and the problems only arose "when he [left] the courtroom." In any event, misconduct, especially in the context of suggestions of malingering by the petitioner, also does not establish a lack of competency. Put simply, there is no indication that the petitioner was unable to understand the proceedings against him and to assist in his defense. The

petitioner has failed to demonstrate that there is a reasonable probability that, but for O'Connor's decision to stipulate to competency, the outcome of the competency hearing would have been different.

The judgment is affirmed.

In this opinion the other judges concurred.